## BROWN–ROBERTS HARDWARE & SUPPLY CO., Limited, v. EVANS.*

No. 4699.

Court of Appeal of Louisiana. Second Circuit.

March 29, 1934.

---

*Rehearing denied May 4, 1934.

H. W. Ayres, of Jonesboro, for appellant.

Wayne Stovall, of Jonesboro, for appellee.

MILLS, Judge.

Plaintiff, a corporation domiciled at Alexandria, La., asks judgment against defendant, carrying on a restaurant business at Jonesboro, La., for $180, the price of an electric refrigerator sold by it to defendant, to be shipped direct from the factory of the Standard Refrigerator Company, at Fond du Lac, Wis.

The purchase, the price, and delivery are admitted, but defendant claims that the machine was so defective in material and workmanship that it would not operate or render the service for which it was bought; that plaintiff, when notified, failed to put the machine in running condition, compelling him to employ outside refrigerator repair men. These experts being unable to make it work and being in immediate need of a refrigerator, he returned the defective machine to the manufacturer and purchased another make; and that because of the failure of the refrigerator to render any service, there was a complete want of consideration which is specially pleaded in bar of plaintiff's demand.

The refrigerator was delivered assembled on August 1, 1932. When connected, it buzzed, but failed to generate any refrigeration. Four or five days later it was inspected by plaintiff's salesman who testifies that it was not functioning properly. He admits that his company did not offer to and would not have done any repair or service work because it did not feel obligated to do so under the contract of sale. Defendant, in an honest effort to make the box work, employed a number of electrical experts in the town of Jonesboro, several of whom were experienced in repairing and servicing electrical refrigerators. They were unable to definitely locate the source of, or to correct the trouble, without taking the machine down, which they declined to do for fear of defeating defendant's rights under his guarantee. It appeared that the motor was overloaded, causing the mechanism to become hot and automatically cut off. Whether this was caused by con-gealed oil or defective points is not established. One expert testified that he went as far as an outside mechanic should go, without being able to correct the trouble. Others advised that the machine be sent to Alexandria or to the factory.

Because of the season and the nature of his business, defendant was in imperative need of a refrigerator. Obtaining no relief from the seller and expecting none quickly from far off Wisconsin, he did the natural thing, shipped the machine back to the maker direct and purchased one of another make from other parties, at a higher price.

Plaintiff admits the return of the machine to the manufacturer, but fails by deposition or otherwise to offer any testimony to rebut defendant's claim of unfitness. We therefore consider it definitely established that the refrigerator would not accomplish its intended purpose. It is difficult to conceive of a more useless article than an electric refrigerator which will not refrigerate.

█ It is well settled in our law that in all sales there is an implied warranty that the object sold is fit for the purpose intended, which warranty can only be avoided by an express and explicit waiver. Fee v. Sentell, 52 La. Ann. 1957, 28 So. 279; Crawford v. Abbott Auto. Co., 157 La. 59, 101 So. 871; Jackson v. Breard Motor Co., 167 La. 857, 120 So. 478; Stracener v. Nunnally Bros. Motor Co., 11 La. App. 541, 121 So. 617, 123 So. 911; S. P. Weaver Lbr. Co. v. Paramount Products Co. (La. App.) 146 So. 356.

█ Plaintiff contends that there was such a waiver in the contract of sale, and, furthermore, that defendant has lost any rights he might have had by shipping the machine back to the maker, instead of the seller, rendering it impossible to restore the status quo.

The salesman who handled the transaction for plaintiff testifies that he sold defendant the refrigerator for the wholesale price of $180, instead of the list price, $80 greater, upon the express agreement that it should be shipped to purchaser direct, with only the factory guarantee and with the understanding that plaintiff should not be obligated to service the machine, its guarantee going only "as far as when the machine was delivered."

This verbal agreement was put into writing and made definite by two letters written defendant by plaintiff. The first, dated July 11, 1932, reads in part as follows:

"* * * Before having shipment made, however, we thought it best to write you that

we are not in position to service this refrigerator, and it would, therefore, be necessary for you to accept only the factory's guarantee on it and take up with them direct any matter pertaining to servicing that might come up. We have not been handling electric refrigerators up to the present time and we haven't just now the organization to look after servicing these machines."

The second, dated July 19th, contains the following:

"We wrote you on July 11th with reference to the order you gave our Mr. Currie for 1—Model D Standard Electric Refrigerator, advising that we were not in position to maintain a service department, and asking if it would be satisfactory for you to accept the factory's guarantee only and look to them for adjustments in case of any trouble developing.

"While we haven't had a letter from you, our Mr. Currie reports that he talked with you on the subject and that the proposition as outlined in our letter is agreeable to you. We have, therefore, instructed the factory to let the shipment go forward."

These terms, unobjected to by defendant, constitute the contract between the parties. Neither letter contains any express or explicit waiver of the warranty of fitness for the intended use. They clearly show that defendant is to look to the manufacturer for servicing and adjustments, but there is nothing to indicate an intention that defendant should be forced to accept and pay for a wholly unfit object.

The factory guarantee filed in evidence is limited to replacing defective parts. It not only does not assume the warranty of fitness for use, but specifically limits its obligation to that stated, and provides that no person is authorized to bind them to any greater guarantee. The seller's implied warranty of fitness for use then was neither waived by the purchaser nor assumed by the manufacturer.

It is testified that plaintiff paid to the manufacturer the price before the machine was shipped. Just what amount was paid is not proven. Surely plaintiff made some profit on the transaction. Defendant paid the freight on the shipment to him, for which he is entitled to credit. The refrigerator was returned collect.

Under the peculiar conditions attached to this sale, we cannot see where defendant erred in returning the defective machine to the source from which he obtained it. Had he delivered it to plaintiff, it, having no service department, in turn would have sent it to the factory. Plaintiff was apprised of the defective condition of the box and took no steps to repair it. The status quo from the standpoint of defendant was preserved by sending the refrigerator back to the maker. The difficulty, in so far as plaintiff is concerned, is that it paid for the machine before it was shipped, just how much is not shown. Defendant was never informed of this and is not to blame that the manufacturer now has both the machine and the price.

For the above reasons we find that the judgment appealed from, for plaintiff as prayed for, is erroneous and it is accordingly reversed and judgment is now rendered rejecting plaintiff's demand, with costs of both courts.

---

*Rehearing denied May 4, 1934.