## PASSMAN v. LINDSAY.
### No. 6059.

Court of Appeal of Louisiana. Second Circuit.

Dec. 1, 1939.

W. F. Pipes, of Monroe, for appellant.

W. T. Holloway, of Jonesboro, for appellee.

DREW, Judge.

Plaintiff instituted this suit on a chattel mortgage note representing the balance on the purchase price of one Norge Beverage Chest. He prayed for judgment in the sum of $192.96, with 8% per annum interest from June 11, 1937, until paid, and for 25% on the amount as attorney's fees and all costs.

Defendant in answer admitted the execution of the note and mortgage; denied owing plaintiff any amount. Further answering—

"8. * * * Your respondent shows that when he purchased the said box as described from the plaintiff, the vendor, it was understood and agreed that the said box would be used to keep beer and other bottled drinks cold and suitable for sale to customers; that it would operate much cheaper than any other box and give complete service; that the said plaintiff warranted the box to give complete service for all of the purposes intended, to freeze quickly and keep the contents at a temperature suitable for sale.

"9. That acting upon the representations of the plaintiff and believing that the box would be suitable for the purposes represented, your respondent purchased the same as set forth in the plaintiff's petition; that at the time of the purchase the plaintiff assured and represented to the respondent that in the event it did not give complete and satisfactory service, he would make the necessary adjustments or would pick up the box if the necessary adjustments could not be made.

"10. That after the said box was installed and your respondent started using the same, it used twice or three times more current than the amount that plaintiff informed your respondent it would use; that the cost of operating was about twice that amount that your respondent was paying in using his previous box.

"11. That in addition to the cost of operating, your respondent found that it would not maintain enough temperature to keep his beer and soft drinks cold enough to sell and drink; that he immediately informed plaintiff of that but that plaintiff was unable to place the box in working order and in the order that he represented it to the respondent; that as the result of that your respondent was finally compelled to purchase another ice box to cool and keep his drinks suitable for sale at a considerable expense.

"12. That he repeatedly informed plaintiff that the box was unsuitable for the purpose it was sold and requested that he either make the necessary repairs or pick the same up, as per agreement and war-

ranty, but that plaintiff neglected, failed and refused to do so.

"13. That finally and only after your respondent found that it was necessary that he secure another box of some description to carry on his business, and after plaintiff had refused and failed to carry out his agreement, respondent disconnected the box and notified plaintiff to come and get same and return your respondent's note and cancel the chattel mortgage and obligation.

"14. That plaintiff refused to do either and has filed suit on the note given as the balance of the purchase price; that the said note was without any consideration whatsoever; that the failure of the said box to render any service whatsoever constituted a complete want and failure of consideration and that your respondent does specially plead the same as a bar to the demands of the plaintiff."

Defendant further reconvened claiming plaintiff was indebted unto him in the sum of $195.

The lower court rendered judgment rejecting the demands of plaintiff and also those of defendant in reconvention. From this judgment plaintiff has perfected this appeal. Defendant has neither appealed nor answered the appeal, therefore, the reconventional demand is not before us.

The record discloses that the sale to defendant was made by R. M. White, an agent of plaintiff, and that he was thoroughly familiar with defendant's needs in the way of refrigeration. At the time of the sale defendant was using an ordinary icebox in which to cool his drinks for sale, to-wit, coca-cola, pop, beer, etc., and he was assured by the agent White that the electric box would be more economical and much better in every way than the icebox. He also guaranteed to defendant that the beverage chest sold him would take care of his business amply. In order to make the sale, the agent White gave to defendant the following agreement in writing:

"May 5, 1937.

"This is to certify that I (R. M. White), Agent for Passman Equipment Company, agrees that (30) thirty days from date O. T. Lindsay desires to return box back Passman Equipman Company. That he can do so without further obligation to him.

"R. M. White, Agent for
"Passman Equipment Company."

After the chest was installed, defendant gave it a thorough try-out for about two weeks and, as is shown by the testimony of defendant, the iceman and a customer, the chest did not keep the drinks cold enough for them to be salable.

We think the evidence bears out the fact that the chest was not overloaded. In order to have the bottled drinks cold enough to be salable, it was necessary for defendant to purchase and place in the chest from 40 to 60 pounds of ice daily. After trying this plan for a while, he realized that the electric bill to operate the chest was an unnecessary expense, so he discarded it and purchased an icebox. The ice used to cool the drinks in this new icebox was from 50 to 75 pounds a day. When defendant found the chest was unfit for the purpose for which it was bought, he notified the agent who sold it to him and requested that it be taken up. Nothing was done. Defendant later notified plaintiff and nothing was done until long after defendant ceased using the box, when a repair man was sent out, who connected the chest again with the electric current and tested it for a period of 15 or 20 minutes, after which he declared there was nothing wrong with it. A short time before this suit was filed, another representative of plaintiff made the same kind of test of the chest and pronounced it all right. Neither of plaintiff's representatives tested the chest to find out if it would keep the drinks at the proper temperature during a day's run of business. The uncontroverted testimony of those who made use of the chest is that it did not do the job.

■■ It is well settled in our law that in all sales there is an implied warranty that the object sold is fit for the purpose intended, which warranty can only be avoided by an express and explicit waiver. A. Baldwin Sales Company v. Mitchell, 174 La. 1098, 142 So. 700; and numerous cases cited therein. In the contract involved in this suit there is no waiver of the implied warranty. Furthermore, there is nothing in the contract of sale and no oral testimony to show that plaintiff's agent who sold the chest was not authorized to make any guarantee he chose to make and he did guarantee that the chest would do the work for which defendant was buying it, and he signed a written agreement wherein it was agreed that if, for any reason, defendant became dissatisfied with the chest within thirty days after delivery, plaintiff would pick it up and cancel the notes held by him against defendant. Defendant became

-dissatisfied within thirty days and for a good reason. He notified plaintiff's agent to come and take up the chest, but nothing was done. Plaintiff cannot recover the agreed purchase price.

Plaintiff complains of the judgment below in that it did not award him the ownership of the chest after his demand for payment was rejected. The complaint is well founded. The effect of the judgment is to rescind the sale and to place the parties in as nearly the same position as before the sale was consummated.

It therefore follows that the judgment of the lower court is amended by decreeing plaintiff to be the owner of the chest now in possession of defendant and, as amended, the judgment of the lower court is affirmed with costs.