Court of Appeal of Louisiana.
Second Circuit.
Jan. 5, 1940.

George J. Ginsberg, of Alexandria, for appellant.

C. H. McCain, of Colfax, for appellee.

TALIAFERRO, Judge.

On March 15, 1938, plaintiff sold to defendant a Pelco Beverage Cooler for the price of $360, on which he paid $35 cash and was allowed an additional credit of $10 for an old box taken in trade. After adding to the balance specified amounts for carrying charges, tax, etc., there remained to be paid the sum of $372.48, for which defendant executed note payable in 24 monthly installments of $15.52 each. The note was secured by chattel mortgage duly registered. Payments were made on the note in May, June, August and September. Defendant refused to make further payments for the alleged reason that the cooler had not functioned and was not then functioning as represented by the seller.

Plaintiff instituted this suit against defendant, not on said note and mortgage, but on an account kept against him, covering the transaction, which contains a charge for the price of the cooler, sales tax, carrying charges, etc., and admitted credits. The balance disclosed thereby is $325.92. Judgment is prayed for this amount. Why the note, stipulating for ten per cent attorney's fee and secured by mortgage, was not sued on preferably to the account carrying no provision for such fee nor mortgage security, arouses curiosity, at least.

Defendant denies that he is legally bound to pay the alleged balance due on the cooler for the reason that it was a used or second hand one, and not new, as represented; and that it was inherently defective and failed to function or render the

service for which purchased, such as plaintiff warranted it would do. The answer sets up several instances when and how the cooler failed to operate satisfactorily and the efforts made by plaintiff's agents to remedy same. Defendant reconvenes and sues for dissolution of the sale of the cooler for redhibitory defects and prays for judgment for the amounts paid by him on the price thereof, and for the additional sum of $50 expended for ice used in the cooler to maintain a temperature sufficient to keep cool the bottled drinks kept therein for sale.

The lower court rejected plaintiff's demands, dissolved the sale of the cooler and awarded defendant judgment for $97.08 with legal interest from judicial demand.

Plaintiff appealed. Defendant has not answered the appeal, therefore, no increase in the judgment, as by him urged in brief, is permissible.

The cooler in question operates with electric energy. When it functions properly water placed therein is frozen and automatically slides into the box wherein the bottled drinks are stored. The drinks are thereby kept at desired temperature.

Defendant desired the cooler for the purpose it was designed to fill, and plaintiff knew this. He wished to discard his old ice box and be relieved of the trouble and expense of keeping on hand a supply of ice, daily delivered from the manufacturer.

Testimony of defendant, corroborated by several of his customers, unquestionably shows that within a few weeks after the cooler was installed by plaintiff's workman, it began to function irregularly, would not produce the ice needed to cool the drinks, and, in general, gave considerable trouble. Time and again he called upon plaintiff to remedy the defects in the machine. Its agents, skilled in the operation of such coolers, generally responded promptly and in each instance put the cooler in running order, but soon thereafter it would resume its former inefficient operation. Defendant was forced to purchase ice regularly and deposit in the cooler to maintain a temperature necessary to render drinks palatable. This continued so long as he used the cooler.

Plaintiff's agents and representatives deny that the cooler was defective in any respect. Some of them say that on several occasions they found the cooler functioning perfectly after being notified by defendant that it needed attention. Two of these agents ascribe to low voltage all the ills defendant says the cooler possessed. The motor burned out and became wholly ineffective. This was accredited to low voltage. A new motor, however, was supplied. It did not burn out though energized with the same current, yet the failures experienced with the old motor were repeated.

Defendant's electricity was supplied from Pineville, only twenty-five miles distant. It came over a high power line, carrying a voltage of 110. We know that such a current is not always maintained at the maximum voltage, and if, as contended by plaintiff, a lower voltage burns out motors, it is certainly unwise and possibly dangerous for the owners of such motors to patronize such current. We are not convinced of the correctness of plaintiff's contention on this score.

The trial judge has provided us with a written opinion, wherein he reviews the pleadings and testimony at length. We quote with approval therefrom, viz.,

"Thus the evidence comes to the court in this conflicting manner on the service and cause of failure to give service required of the cooler by defendant, and as warranted by plaintiff on the question at issue. However, there are uncontradicted facts corroborating the contention of defendant and which cause the evidence to preponderate in his favor on the question involved.

"1. As many times as plaintiff was called to adjust the cooler, it was found each time that something was wrong and the system needed adjustment. If the voltage was found to be too low, defendant was not advised that the cooler would not give him the required service because of low voltage. Neither was he advised that the motor was burned out because of a defective switch. On each and all occasions when an adjustment or repair was made by plaintiff, it left defendant with the impression that the cooler would now give proper service.

"2. During all the time plaintiff was trying to make the cooler give proper service, defendant was buying ice and placing in the cooler until he had spent about Fifty ($50.00) Dollars for ice. If the cooler was intended to make a sufficient quantity of ice, then it was not necessary to purchase any ice and when defendant was required to buy ice to enable him to

492

carry on and use the cooler at all, this is a strong corroborating fact supporting the contention of defendant that the cooler was not giving the proper service and plaintiff was unable to make it do so during the time, although he was faithful to try."

While it is true defendant made four payments during the time the cooler was giving him so much trouble, under the circumstances of such payments, making them should not militate against the position taken in the case. He says he made these payments in each instance after an agent of plaintiff, at his request, had come to his place of business and put the cooler in running condition. He hoped from time to time that satisfactory service would be rendered by the cooler. The weather was hot and the demand for cold drinks active.

We do not think the cooler a used or second hand one. The testimony seems clear on the point. Neither is it proven that defendant sold the cooler when he disposed of his other business assets.

The cases of Hemenway, Inc. v. Williamson, La.App., 173 So. 781 and Hemenway, Inc. v. Roach, La.App., 175 So. 892, are very much similar to that at bar in facts and legal principles. Both cases involved milk cooling machines and in each the sale was dissolved on the plea of the purchaser that the machine was unfit for the purposes acquired and failed to function as represented; that is, that it would cool milk to the temperature desired.

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice." Civil Code, art. 2520.

In this case it is obvious that the use of the cooler has been "so inconvenient and imperfect" that it must be assumed that defendant would not have acquired it had he known of the vice or defective qualities which manifested themselves soon after his purchase. It does not devolve upon a purchaser of machinery, which fails to function as guaranteed, to prove the exact cause of its shortcomings. Proof that it failed is sufficient.

Finding the judgment appealed from to be correct, it is affirmed, with costs.