The Passman Equipment Company, of which plaintiff, Otto E. Passman, is the sole owner, conducts a business in the City of Monroe, Louisiana, engaging, among several pursuits, in the rebuilding and sale of refrigeration equipment.
On September 10, 1940, that company sold and delivered to and installed for defendant, P.G. Marine, who was then commencing the operation of a combination small grocery store and meat market in Monroe, Louisiana, a rebuilt refrigerating meat counter that was unconditionally guaranteed for a period of twelve months. As part of the sale's consideration Marine gave his promissory note, payable in monthly installments, it being secured by a vendor's lien and chattel mortgage on the purchased property.
The mentioned equipment consisted of a long case or box fitted with doors, in each end of which was a coil, and a compressor or motor. The motor, situated on the outside of the box, pumped appropriate fluid into the coils and thereby provided the desired refrigeration. A conveniently located switch, when turned, regulated the box's temperature.
Only the first monthly installment of the note was paid; and the store and market business ceased operations about two and one-half months after its commencement.
This suit followed defendant's failure and refusal to make further payment. In it plaintiff asks judgment for the note's unpaid balance and for recognition and enforcement of the securing chattel mortgage and vendor's lien on the property sold.
In resisting the demand, defendant shows in his answer that the equipment was purchased for the purpose of preserving meat products handled in his market, and that it failed to give the service that it was guaranteed to furnish and for which it was sold. In other words, redhibition is pleaded; and he prays that the suit be dismissed and that he have judgment in reconvention for the value of meat allegedly spoiled because of the unsatisfactory service rendered.
Evidence was adduced on the issue of redhibition, and there was judgment in plaintiff's favor as prayed for. The reconventional demand was rejected.
The case is before this court on defendant's devolutive appeal.
The defense is founded on the provisions of Article 2520 of the Louisiana Civil Code, reading:
"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the *Page 319 
buyer would not have purchased it, had he known of the vice."
Thus the controversy presents the question of fact of whether or not the equipment sold was imperfect and inadequate for the purpose for which it was intended.
The testimony of defendant is that the refrigerating counter, during the two months' period in which he sought to use it, did not give satisfactory service except for a few days following the installation. It did not provide the required cold temperature, and as a consequence his meat products spoiled several different times. On numerous occasions, perhaps twelve or fifteen, the seller, when requested, sent mechanics who temporarily rectified the experienced trouble; but shortly after the service man's departure, in each instance, there was a recurrence of the difficulty.
Other witnesses offered by defendant testified substantially to the same effect, except that one of these fixed the period of the box's successful functioning following installation at three and one-half weeks.
When asked why he discontinued his business two and one-half months after commencing it, defendant said: "It was because the meat counter wouldn't keep meat and the grocery business alone wouldn't afford business enough to keep it open."
Plaintiff offered the testimony of three mechanics, one of whom was never in his employ, who had serviced the box following complaints from defendant. None found the existence of defects. They did observe on most of their service calls, however, that the equipment's switch had been previously turned by some one so as to provide a temperature too low for correct refrigeration. With respect to this, they explained that when there occurred an extremely low setting of the switch, ice accumulated on the coils and stopped the refrigeration. Always only proper adjustments were necessary to eliminate the condition found.
A butcher named Jack Little was employed in the meat market the first and second Saturdays after its opening. Three weeks later he worked there an entire week. Then, after being out about two weeks, he returned for another engagement of almost a week. This person testified that the box gave no trouble, was in good condition, and functioned effectively during each of his mentioned periods of employment in the market.
A sanitarian with the Ouachita Parish Health Unit made an unannounced and regular inspection of the market in October, 1940, or about a month after the box's installation, and found everything there in good condition. In the following month he was requested by defendant to call at the market. This he did, and there he observed twenty-one pounds of spoiled stew meat in the box. However, the equipment appeared to be working all right.
This sanitarian further said that defendant usually handled native meat, which, in a refrigerator counter where the doors were constantly opened as was defendant's, could not be preserved or kept longer than a week.
After a close study of the evidence in the record we cannot say that the trial judge manifestly erred in holding that the box was not defective or not suitable for its designed purpose, and in resolving the presented issue of fact in favor of plaintiff. In fact we are convinced that the difficulties forming the basis of most of the complaints registered by defendant were due only to an improper setting of the mechanism's switch.
Whether this maladjustment was deliberately and purposely effected by defendant to provide a means for evading payment of his indebtedness, as plaintiff suggests occurred, or was innocently and unintentionally accomplished, is a question unnecessary to decide. Furthermore, we might observe that the evidence disclosing a spoiling of meat several times is of little probative value, because it does not appear when that product was placed in the refrigeration unit.
The cases of Brown-Roberts Hardware Supply Company, Ltd., v. Evans, La.App., 153 So. 562, and Passman v. Lindsay, La.App., 192 So. 767, cited and relied on by defendant, are clearly distinguishable from the instant controversy. In each of those, the evidence conclusively showed that the sold refrigeration equipment was defective and imperfect.
For the foregoing reasons the judgment is affirmed.
DREW and TALIAFERRO, JJ., concur. *Page 320