164 So.2d 656 (1964)
Jesse B. GLENN, d/b/a Lake Charles Alignment & Brake Service, Plaintiff and Appellee,
v.
Dr. John B. CAIRE, Defendant and Appellant.
No. 1165.
Court of Appeal of Louisiana, Third Circuit.
May 28, 1964.
Rehearing Denied June 17, 1964.
Patin & Patin, by J. Fred Patin, Lake Charles, for defendant-appellant.
J. Bryan Miller, Lake Charles, for plaintiff-appellee.
Before FRUGE, SAVOY and HOOD, JJ.
HOOD, Judge.
This suit was instituted by Jesse B. Glenn, doing business as Lake Charles Alignment & Brake Service, against Dr. John B. Caire to recover the sum of $337.62, being the amount alleged to be due plaintiff by defendant for an automobile air conditioning *657 unit, and for labor performed in installing that unit in and subsequently removing it from defendant's automobile. As a defense to the suit defendant pleads redhibition, alleging that the thing sold has a vice or defect which renders its use so inconvenient and imperfect that defendant would not have purchased it had he known of the vice. The defendant also filed a reconventional demand against plaintiff for the sum of $95.00, basing that claim on allegations that his car was damaged because of plaintiff's negligence in removing the air conditioner and in placing it on the upholstered rear seat of defendant's automobile. After trial, judgment was rendered in favor of plaintiff awarding him the full amount claimed and rejecting the reconventional demands of defendant. Defendant has appealed.
Plaintiff, as the owner of an automobile brake and wheel alignment service, customarily installs and repairs automobile air conditioners. In May, 1963, Dr. Caire contacted plaintiff and inquired as to whether he could obtain and install in defendant's Volkswagen automobile an air conditioning unit which is designed for that type vehicle and which would function properly. Plaintiff thereupon obtained a "Bock" air conditioning unit from Mr. E. G. McFillen, who handles and sells automobile air conditioners, the latter stating that this type unit was a good one and was made especially for Volkswagen automobiles. Plaintiff then advised Dr. Caire that he had obtained such a unit, and that he would install it for him for a stated amount, the consideration being $245.00 for the unit, $40.00 for installing it, and an undetermined additional amount for such Freon gas as was necessary. Defendant authorized plaintiff to install the unit for that consideration, and plaintiff thereupon installed the Bock unit in defendant's car.
Dr. Caire testified that upon driving his Volkswagen automobile immediately after this unit had been installed, he noticed that the motor was sluggish, the car had no pickup, the engine was strained, and the speed was reduced. His testimony to that effect was supported by that of Mr. Holley Heard, who rode as a passenger with him in the car the day the air conditioner was installed. Both of these witnesses testified that Dr. Caire attempted to use the air conditioner on two separate trips that day, but on each occasion it was necessary for him to turn the unit off in order to permit the car to function properly.
Dr. Caire took his automobile to McGhee Motors, the Volkswagen dealer in Lake Charles, on the following day, and after the car had been examined and tested by mechanics in that establishment, defendant was informed by them that the air conditioner was obstructing air to the engine of the car, and that if he allowed the air conditioning unit to remain in his car he could expect trouble from the engine because it would overheat. He was advised by these mechanics to not drive the car with that particular type of air conditioning unit in it.
Upon receiving this information Dr. Caire returned his car to plaintiff the day after the air conditioning unit had been installed, advising plaintiff of the information which he had received from the mechanics and instructing plaintiff to remove the unit from the automobile. Pursuant to those instructions plaintiff removed the unit, and after doing so, he placed the major part of it in a cardboard box and set the box on the back seat of defendant's car. Shortly after the car was returned to him, defendant went back to plaintiff's place of business and offered to return the unit to plaintiff. Plaintiff refused to accept it, however, informing defendant at that time that he expected him to pay for the unit, for installing it and for removing it. Defendant thereupon took the unit back to his home and since that time it has been stored in defendant's garage. This suit was then instituted.
At the trial of this case the service manager and the assistant service manager of McGhee Motors testified that they examined and test-drove Dr. Caire's car while this unit was in it, and that in their opinion the *658 unit was not performing properly, that it is constructed or was installed in such a manner that it prevented the throttle ring thermostat on the car's motor from operating, causing the engine to overheat, and that in their opinion if defendant had attempted to operate his automobile with that type of air conditioning unit in it the engine would have "burned up," and the car would have been seriously damaged within four to six weeks after the unit had been installed. They further testified that the Volkswagen dealer had warranted the motor of defendant's automobile for a period of 24 months or 24,000 miles, whichever came first, that the warranty was still in effect at the time the air conditioning unit was installed, but that the dealer would not have honored the warranty if the automobile had been operated with this Bock air conditioning unit in it. The service manager stated that he had seen and had serviced other Volkswagen automobiles in which Bock air conditioning units had been installed, and which automobiles had been damaged from overheating, the damage consisting of burnt valves and a piston seizure.
Plaintiff, on the other hand, testified that he and Mr. Robert E. Cook, an expert on Bock air conditioning units, inspected and road tested Dr. Caire's automobile after the latter had complained of the unit. They found that the unit which plaintiff had installed was cooling the car, that it had no effect on the operation of the engine at its top speed, and that it had only a slight effect on the engine when operated at low speed, which was normal for any automobile with an air conditioning unit. These two witnesses, and also plaintiff's mechanic who had actually installed the unit, testified that the unit was installed properly and in exact accordance with the directions which come with the unit, and that there is no other manner in which such a unit can be installed in a Volkswagen.
The service manager and the assistant service manager of the Volkswagen dealer in Lake Charles have had specialized training and a considerable amount of experience in the servicing and repairing of Volkswagen automobiles. Neither of these experts, however, have had any training or experience with Bock air conditioning units, although both have had experience with the installation and operation of other type air conditioners in Volkswagen automobiles.
Plaintiff and his mechanic who installed the unit in defendant's car testified that although they had done general repair work on Volkswagens, they had never installed an air conditioning unit in that type automobile before, and they had never installed a Bock air conditioner in any type automobile before installing one in Dr. Caire's car. Neither of these witnesses had had any special training as to Volkswagens. Both had had some experience with automobile air conditioners generally, but neither was familiar with a Bock unit.
Mr. Cook, who testified in behalf of plaintiff, is thoroughly familiar with Bock air conditioning units. He is the representative of a company in Houston which imports these units from Germany, and he has sold and installed from 25 to 40 units in Volkswagen and Karmann Ghia automobiles, the latter make having the same type engine as a regular Volkswagen. He testified that the Bock unit was made exclusively for Volkswagens, and that other Bock units have worked satisfactorily in other Volkswagens, including his own. As we have already pointed out, he inspected Dr. Caire's car and concluded that the unit had been correctly installed and was functioning properly.
Considering the specialized training and the experience of each of these experts, we think the service manager and his assistant of McGhee Motors are better qualified than any of the other witnesses who testified to determine whether the Bock unit prevented Dr. Caire's car from performing properly and whether the continued operation of the car with that unit in it would have seriously damaged the engine of that car. On the other hand, we think Mr. Cook is better *659 qualified than other witnesses to determine whether there were any mechanical defects in the Bock unit, whether it had been correctly installed in defendant's car and whether these units had operated satisfactorily in other Volkswagen automobiles.
With these considerations in mind, we think the evidence establishes that the Bock air conditioning unit had been installed in defendant's car in the manner intended by the manufacturer of that unit, and that this type of unit has functioned properly in other Volkswagen automobiles. The evidence also establishes, however, that the Bock unit which was installed in Dr. Caire's car caused that particular car to overheat. The evidence further establishes that the engine on Dr. Caire's car would have been seriously damaged within a period of from four to six weeks if defendant had continued to operate the car with that unit in it for that period of time. The evidence does not establish any particular vice or mechanical defect in the Bock unit itself.
Our findings as to the facts appear to be in complete accord with the findings of the trial judge. The trial judge, however, was of the opinion "that in order for the defendant to maintain the plea of redhibition * * * he must show that the Bock air conditioning unit is not suitable for installation in Volkswagen automobiles." Since he interpreted the evidence as showing that this type of air conditioning unit was suitable for installation in Volkswagen automobiles generally, and since the evidence does not show that the unit itself was defective, the trial judge concluded that defendant had failed to establish facts sufficient to sustain his plea of redhibition.
In our opinion the transaction which took place between plaintiff and defendant was in the nature of a sale. The thing sold was an air conditioning unit installed in defendant's automobile. The defendant-buyer made known to the seller the purpose for which he intended to use the air conditioner, and he relied upon the plaintiff-vendor's superior skill and knowledge of automobiles and air conditioning units to produce the desired result, that is, to satisfactorily cool his Volkswagen automobile. Although not specifically stipulated by the parties at the time of the sale, there can be no question but that they understood that the air conditioning unit not only would cool the car, but also that it would not prevent the car from operating properly and that it would not cause the car's engine to be substantially damaged within a very short period of time. A definite purchase price was agreed upon, which included the cost of installing the unit in defendant's car.
In all sales in Louisiana there is an implied warranty that the object of the sale is free of a redhibitory vice or defect. LSA-C.C. Articles 2475, 2476; Harris v. Automatic Enterprises of Louisiana, Inc., La.App. 4 Cir., 145 So.2d 335; Fisher v. City Sales and Service, La.App. 3 Cir., 128 So.2d 790; Combs v. International Harvester Company, La.App. 2 Cir., 115 So.2d 641. Unless the warranty is waived the seller warrants the thing sold as fit for the intended purpose. J. B. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693; Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871; Harris v. Automatic Enterprises of Louisiana, Inc., supra; E. Levy & Co. v. Pierce, La.App. 2 Cir., 40 So.2d 818.
Redhibition is defined in LSA-C.C. Article 2520 as follows:

"Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that it must be supposed that the buyer would not have purchased it, had he known of the vice."
It is settled that in an action to set aside a sale on a plea of redhibition where complicated machinery is involved, it is not necessary for the buyer to seek out and prove the particular and underlying cause *660 of the defect which makes the object sold unfit for its intended use. It is sufficient that he allege and prove that such a defect exists. Fisher v. City Sales and Service, supra; Crawford v. Abbott Automobile Co., supra; Brown-Roberts Hardware & Supply Co. v. Evans, La.App. 2 Cir., 153 So. 562; Goff v. Dewey Olivier, Inc., La. App. 3 Cir., 137 So.2d 393 (Cert. denied); J. B. Beaird Co. v. Burris Bros., supra; Chas. A. Kaufman Co. v. Gillman, La.App. Orl., 142 So. 159; and Bergeron v. Mid-City Motors, Inc., La.App. 1 Cir., 162 So. 2d 835.
In Fisher v. City Sales and Service, supra, we said:
"Although the plaintiff has not proven exactly what defect of the machine caused the fuses to blow so often, we think that, by itself, the repeated burning of the fuses causing repeated interruption of the service of the unit, is a defect of a redhibitory nature entitling the plaintiff to rescission of the sale, if indeed caused by or resulting from the normal use of the machine, as we think the plaintiff has sufficiently proved; * * *." (128 So.2d 792).
Also in Crawford v. Abbott Automobile Co., supra, our Supreme Court held:
"`It is not incumbent upon the buyer to seek out, allege, and prove the particular and underlying cause of the defects which make the thing sold unfit for the purpose intended, particularly when the thing is a complicated piece of machinery; but it suffices if he alleges and afterwards proves as a fact that such defects exist.'" (101 So. 872).
We agree with plaintiff and the trial judge that the defendant has failed to show any specific mechanical defect in the Bock air conditioning unit itself. The evidence does establish, however, that this unit did not function properly in defendant's car, and that the continued use of the car with that unit in it would seriously damage the automobile. Although the evidence fails to establish the specific reason why the unit did not function properly in that automobile, we think it does establish that there was such a vice or defect of the thing sold, that is, an air conditioning unit installed, that it must be supposed that Dr. Caire would not have bought it or had it installed in his car had he known of the vice. Because of this redhibitory defect, defendant is entitled to have the sale voided.
In our opinion the trial judge erred in holding that it was essential to defendant's case that he prove that the Bock air conditioning unit was not suitable for installation in Volkswagen automobiles generally and that it was of "no consequence" that the unit would not work properly in defendant's car. We think there was an implied warranty that the unit would work satisfactorily in defendant's automobile, regardless of whether it was suitable for other Volkswagens, and that the defendant has made out a case of redhibition by establishing that the Bock unit did not work properly in his car.
Plaintiff contends alternatively, and in the event it is determined that the air conditioner was subject to a redhibitory vice, that the action for redhibition must fall because defendant has failed to prove that a tender or offer to return the unit to plaintiff was made. We think the evidence clearly shows that Dr. Caire returned and tendered the unit to plaintiff after it had been removed from the car and that plaintiff refused to accept it. Plaintiff Glenn, in fact, testified that when Dr. Caire returned the unit to him, "he asked me what I wanted to do with this unit," and "I told him he could do whatever he wanted to do with it because it was his unit. It was not mine." We, therefore, find no merit to this alternative argument made by plaintiff.
Among the items claimed by plaintiff is a charge of $40.00 for removing the air conditioning unit from defendant's car. The evidence shows that when Dr. Caire instructed *661 plaintiff to remove it plaintiff informed defendant that he would have to charge him for performing that service, whereupon Dr. Caire agreed to pay plaintiff his charges for removing the air conditioner. Both parties testified that such an agreement was entered into at that time. In view of this agreement, we conclude that plaintiff is entitled to recover the sum of $40.00 from defendant, representing the cost of removing the Bock unit from the car, although he is not entitled to recover the purchase price of the unit or the amount charged for installing it.
By way of reconventional demand, Dr. Caire seeks to recover from plaintiff the sum of $95.00 for damages to the hood and to the upholstery of his automobile. He contends that the latch and lock of the hood were damaged by the negligence of plaintiff in installing and removing the air conditioning unit, and that the upholstery was damaged by oil which leaked out of the air conditioning unit after plaintiff put the cardboard box containing the unit on the rear seat of the car. The trial judge held that the evidence submitted by defendant (plaintiff-in-reconvention) was not sufficient to support this claim for damages, and we agree with that conclusion. Defendant's reconventional demands, therefore, were properly rejected.
Since we have concluded that defendant is entitled to have the sale of the air conditioner rescinded, but that nevertheless plaintiff is entitled to recover from defendant the amount which the latter agreed to pay for removing the unit from his car, it follows that the judgment appealed from must be amended by reducing the amount awarded to plaintiff from $337.62 to $40.00.
For the reasons herein set out, the judgment appealed from is amended by reducing the amount awarded to plaintiff from the principal sum of $337.62 to the sum of $40.00, with interest thereon at the rate of 5 percent per annum from July 26, 1963, until paid, and all costs of these proceedings. In all other respects the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Amended and affirmed.

On Application for Rehearing.
En Banc. Rehearing denied.