John L. Dufief et al. *v.* John A. Boykin.—Boykin and Land, Opponents.

Sale of land from F. to B. in which it was stipulated that "this sale is made under the express stipulation and condition that the said F. shall not be bound by the vendor's warranty of title; and that he does not guarantee said purchaser against the existence of any defects of title, or incumbrances whatever, but such as may have arisen by his own acts; but the said J. F. nevertheless agrees, in case the purchaser should be evicted, to return him the principal of the consideration, but nothing more." The purchaser alleged disturbance but not eviction, and it was urged by the plaintiffs that there was no warrant against any thing but actual eviction. *By the Court*—We understand the restrictive words in the clause of non warranty to be "but nothing more," and that they have relation to claims which the vendee might have beyond the restitution of the price, e. g. the fruits and revenues, the costs of suit, or other damages for which he might be liable. Agreements which parties make for themselves in derogation of the general law should be construed strictly. The agreement to refund in case of eviction added nothing to the legal objection, nor did the exclusion of warranty preclude the legal consequences of the sale, except as specially provided for, and it is no less a legal consequence of the sale that the vendee may suspend the price in case of disturbance, than that the vendor shall refund it in case of eviction. C. C. 2481, 2535.

The only evidence of disturbance was the admission of parties that a suit was instituted by defendants against W. for a portion of the land. *By the Court*.—We think that to avail themselves of this objection opponents should have proved that W. claimed to hold under an adverse title having its origin before the sale from F. to B., or that his possession commenced before that time. That the warranty should have existence, it is necessary the adverse right shall have existed before the sale; and if this right was before the sale an imperfect one, and afterwards perfected by the negligence of the buyer, he has no claim for warranty. C. C 2478.

APPEAL from the District Court of the parish of Terrebonne, *Cole.* J.

*C. A. Johnson*, for defendants and appellants. *Illsley*, and *Race & Foster*, for plaintiffs.

CAMPBELL, J. On the 10th January, 1846, *Joseph Fowler, Jr.*, now deceased, sold, by public act to *John A. Boykin*, a tract of land under the following description: "A certain tract of land situated in the parish of Terrebonne, in this State, containing altogether, one thousand superficial arpents, measuring twenty-

DUFIEF
v.
BOYKIN.

five arpents in front on each side of the bayou Black, by twenty arpents in depth, also on each side of the bayou; bounded on the upper side by lands of *Minor & Dinsmore*, on the right bank of the bayou, descending, and by lands of Dr. *Wade* on the left bank, and on the lower side by lands of which the owners are unknown, being the same property which the said *Joseph Fowler*, *Jr.* acquired by purchase, at a sale of the property surrendered by *Wilhelmus Bogart* to his creditors."

The consideration of the sale was $20,000, for which the vendee gave his several notes, with interest added, payable at certain times stipulated; the whole secured by mortgage on the lands sold and certain slaves in the act enumerated.

The act contains besides, the following clause : " This sale is made under the express stipulation and condition, that the said *Joseph Fowler*, *Jr.*, shall not be bound by the vendor's warranty of title; and that he does not guarantee said purchaser against the existence of any defects of title or incumbrances whatever, but such as may have arisen by his own acts; but the said *Joseph Fowler*, *Jr.*, nevertheless agrees, in case the purchaser should be evicted, to return him the principal of the consideration and nothing more."

These lands were subsequently sold to defendants, who as part of the consideration, assume to pay the debt to *Fowler*.

In October, 1851, plaintiffs who are the heirs of *Joseph Fowler*, deceased, obtained an order for the seizure and sale of the mortgaged property. After the seizure, large payments were made, in consideration of which, it was stipulated by the parties that the sale should be suspended, in order that defendants might by opposition and injunction establish, if in their power, the payment in full of the sum really due by them. To facilitate which proceeding they agreed to dispense with the oath and bond usually required in cases of opposition or injunction, and consented that the defendants might, without exception, urge in defence all matters that might have been urged by *J. A. Boykin*, the immediate vendee of *Fowler*.

In conformity with this argument an opposition was filed, in which the defendants alleging that the sale was of one thousand superficial arpents, at the rate of twenty dollars per arpent, lying on each side of the bayou Black, with a front of twenty-five arpents on each side of the bayou and a depth on each side of twenty arpents; that there is a deficiency in the quantity of land. That the depth on the right bank is so limited by the back lines of the original concession of which the land sold forms a part that only 236 81 superficial arpents are embraced within the lines on that side of the bayou, which added to 570 31 arpents, acknowledged to be found on the left side of the bayou, leaves a deficit in the quantity sold of 192 88 arpents, for which deficency they claim a proportionate deminution of price.

It is next averred by defendants that they are not and never have been in the possession of the whole of that part of the land sold, lying on the right bank of the bayou, 123 90 superficial acres thereof being in possession of one *Wright*, who claims it as owner under an adverse title, which deducted from the whole amount included in the calls of their title, leaves 683 22 arpents as the whole amount of which they have ever had the actual possession under *Fowler's* title; and for which, as they aver, the $22,000, are in full satisfaction, interest included. They further aver that they have instituted a petitory action against said *Wright* for the 123 90 arpents, which suit is still pending,

and claim that they are entitled to suspend the payment of the price *pro tanto*, until the decision of the question of title between them, or until security against the chance of eviction be furnished.

Before proceeding to the consideration of the defences urged by the defendants in execution, it is proper that we should examine a preliminary question presented by the claim in the deed from *Fowler* to *Boykin*, which plaintiffs contend, precludes the defendants from the defence relied on. It is urged that, by the claim of non warranty, in which *Fowler* stipulates that he shall not be bound by the vendor's warranty of title, but nevertheless agrees "in case the purchaser shall be evicted, to return him the principal of the consideration, but nothing more," defendants can not retain any portion of the price, unless an actual eviction shall have taken place, *a fortiori*, that he can not retain it from the apprehension of eviction ; the obligation to return being stipulated, solely on the condition of eviction. *

That this clause has limited the legal liability of the vendor in warranty, can not, we think, be questioned, but not to the extent contended for. In the 2481st Article of the Code, it is provided that, "Even in case of stipulation of no warranty, the seller, in case of eviction, is liable to a restitution of the price, unless the buyer was aware, at the time of the sale, of the danger of eviction, and purchased at his peril and risk." This obligation which the law imposes on the vendor, and which would have been operative without any stipulation embodying it in the contract, is reiterated by *Fowler*. We understand the restrictive words in the clause of non warranty to be "but nothing more," and that they have relation to claims which the vendee might have, beyond the restitution of the price, e. g. the fruits and revenues, the costs of suit or other damages for which he might be liable. Agreements by which parties make for themselves a law, in derogation of the general law, should be construed strictly.

The agreement to refund in case of eviction, added nothing to the legal obligation, nor did the exclusion of warranty, preclude the legal consequences of the sale, except as specially provided for, and it is no less a legal consequence of the sale that the vendee may suspend the price in case of disturbance than that the vendor shall refund it, in case of eviction. C. C. 2481, 2535.

Both rights are expressly given, and the exercise of them should not be denied, unless they have been waived expressly or by the clearest implication.

We will proceed now to the grounds of opposition, premising however, that the land sold by *Fowler*, was included in a larger tract, confirmed to *Robert Martin*, assignee of *Miguel Laturnino*, in whose favor an order of survey was made by Gov. *Gayoso*, in 1798. That *James Bowie*, who became the owner of the whole tract thus confirmed, sold to *Thomas*, without specifications as to depth or front, one thousand superficial arpents in January, 1828 : the land sold, to be taken from the upper end of the tract and to be so laid off as to make the lower line parallel with the upper, and have an equal width on both sides of the bayou, nothing being said of the depth. In 1836, *Thomas* sells to *Bogart* one thousand arpents, measuring twenty-five arpents front on each side of the bayou, by twenty arpents in depth, also on each side of the bayou. *Fowler* subsequently acquired *Bogart's* title and sold to *Boykin* by the same description.

The testimony of *Taylor*, as applied to the plat of survey contained in the record and marked B. satisfactorily establishes that there is embraced within

the calls of *Fowler's* title, an area of only 807 12 arpens, which leaves a deficiency of 192 88 arpens. This deficiency results from the want of depth on the north side of the bayou, the side lines being intercepted by the back lines of the claim as located, at a distance of about nine arpens from the bayou. But it is said that the opponents can not avail themselves of this exception, inasmuch as the confirmation calls for forty arpens in depth on each side of the bayou and that the survey and location which were not approved until July, 1853, might have been so made as to give the required depth on the north side of the bayou.

It is true that the survey and location of the *Martin* claim, were not approved until after the sale by plaintiffs' ancestor; yet it is in evidence that they were made in accordance with its calls and the known rules for surveying Spanish grants, fronting on water courses. Moreover it is in evidence, that though the survey was not approved until 1853, it was made as early as 1825, before *Bowie* sold to the vendor. The irregularity of the location then, if any there be, can not be imputed to defendants. Nor can the defendants be required, as contended, to make up the deficiency, by taking lands within the limits of the grant in the rear of the location on the south side of the bayou, their title limiting them to twenty arpents in depth.

Whether the location of the claim, so that the full depth could not be obtained in conformity with the calls of the titles of defendant, amounts in law to an eviction or not,—about which so much has been said,—is unimportant to this issue. The present question is not one of eviction. This part of the opposition is based on the Articles 2467 and 2468, which declare the obligation of the vendor to be, to deliver the full extent of the premises sold or upon his failure to do so, to submit to a proportionate diminution of the price.

That a deficiency of 192 88 arpents exists, is, we think, fully established.

As regards the second objection, viz: that 123 90 arpents of the land lying on the right bank of the bayou, is and was before the sale, in the possession of *Wright*, who claims it as owner under an adverse title.

From the recitals in the deeds from *Fowler* to *Boykin*, and from *Boykin* to the defendants, possession of the land as sold, is acknowledged by the vendees respectively, and there is no evidence when the alleged disturbance commenced, or under what claim adverse possession is held by *Wright*. The only evidence of disturbance, is the simple admission of parties that a suit instituted by the defendants against *Wright*, for the recovery of 123 90 arpents as represented in a plat on file, is now pending. We think that to avail themselves of this objection, opponents should have proved that *Wright* claimed to hold under an adverse title, having its orign before the sale from *Fowler* to *Boykin*, or that his possession commenced before that time. That the warranty should have existence, it is necessary the adverse right should have existed before the sale; and if this right was before the sale an imperfect one and afterwards perfected by the negligence of the buyer, he has no claim for warranty. C. C. 2478.

It is therefore ordered and decreed, that the judgment of the District Court be reversed and set aside; that the opposition of defendants be overruled and dismissed, and that petitioners be and they hereby authorized to proceed with their seizure and sale upon crediting the writ with $4470 16, (the credit to be applied in deduction of the first note due for $9994,) that being the amount to which the defendants are entitled as a diminution of the price proportionate to the deficiency in quantity of the land sold, reserving, however, to

defendants their right to proceed for a proportionate restitution of the price in case judgment be rendered, in the petitory action against *Wright*, decreeing said *Wright* to be the owner of the 128 90 arpents sued for by defendants.

It is further decreed, that the costs of both courts, be paid by plaintiffs and appellees.

Rehearing refused.