ROGERS, J.
 

 Plaintiff sues for the recovery of the amount of a promissory note and for the enforcement of its vendor’s lien and chattel mortgage by which the note was secured on certain equipment described in the act of sale and mortgage. Defendant, by way of defense, pleaded a breach of warranty under the contract,, in that the equipment as installed in his plant would not function as it was guaranteed to do; and he reconvened for the return of the cash paid on account of the purchase price and for certain expenses incurred in the operation of the equipment.
 
 *1101
 
 Plaintiff filed a plea of one year’s prescription to defendant’s reconventional demand. This plea, after evidence and argument, was referred to the merits,; and, on the merits, 'the court below rejected plaintiff's demand, and awarded defendant judgment on his re-■conventional demand. Plaintiff has appealed.
 

 The defendant operates a creamery and milk cooling plant in the city of New Orleans. Desiring to enlarge his plant, defendant consulted representatives of the plaintiff company. After an examination of the premises, these representatives undertook on behalf •of plaintiff to “step up” the capacity of defendant’s plant by replacing some of the old parts of the existing machinery with new parts and by attaching to the existing equipment certain new equipment, all of which new equipment was furnished and installed by plaintiff for an agreed price of $2,515, of which $315.16 was paid in cash, and the bal.ance was represented by a promissory note, which is the note herein sued on.
 

 The contract between the parties, which was drawn by plaintiff’s representative, contained, among other stipulations, the following guaranties, viz.:
 

 “We guarantee above equipment to produce a~temperature of 33 to 35 degrees in both coolers and supply a brine temperature of no higher than 33 degrees after aerating D00 gallons of milk over tubular cooler from ■a milk temperature of 9-2 degrees on a 5-hour run.”
 

 Also:
 

 “The seller— guarantees the equipment ■against defective material or workmanship for one year from date of delivery.”
 

 The contract also provided that the seller would install the equipment in a workmanlike manner and would maintain free service for a period of twelve months, and that the purchaser would permit none but an authorized representative of the seller to touch, adjust, or service the equipment until it was paid for in full.
 

 Plaintiff objected to any evidence tending to show that the milk, after passing through the refrigeration plant, was not of the guaranteed temperature, the ground of objection being that defendant’s answer did not set forth in detail the manner in which the machinery failed to operate. The objection was overruled, and testimony was admitted on the point, the court holding that the burden of pleading did not depend upon the knowledge of the parties, but upon their obligations.
 

 We do not find any error in the ruling. The defendant, after setting up plaintiff’s warranty under the contract, expressly alleged that after the installation of the equipment his plant did not function properly or anywhere near what the plaintiff guaranteed it would do, and this, in spite of all defendant could do personally and in trying to get plaintiff to carry out its guaranty.
 

 It is a familiar principle of our jurisprudence that, unless warranty is waived, the vendor warrants the thing sold as fit for the purpose intended. Hawley Down-Draft Furnace Co. v. Southern Chemical & Fertilizing Co., Ltd., 51 La. Ann. 914, 25 So. 470; Fee v. Sentell, 52 La. Ann. 1957, 28 So. 279; Jackson v. Breard Motor Co., 167 La. 857, 120 So. 478. Here, the warranty is not only not waived, but it is expressly stipulated.
 

 
 *1103
 
 A sufficient defense to plaintiff’s demand for the purchase price was that the equipment sold defendant and installed in his plant did not fulfill plaintiff’s guaranty. Hence, the burden of showing that it did so comply was clearly upon plaintiff.
 

 Plaintiff contends that the sole purpose of supplementing the existing equipment in defendant’s plant by the - equipment which plaintiff furnished and installed was to step up the unit in the brine tank and to enlarge the cooler. And plaintiff earnestly argues that its warranty is no broader than the terms in which it is expressed, and that its guaranty under the contract extended no further than to maintain a low temperature in the brine used in the refrigeration plant.
 

 But defendant is operating a creamery and milk cooling plant, in order to increase the capacity of which he consulted plaintiff’s representatives. He relied upon their superior skill and knowledge to accomplish the desired result. The known purpose for which the-, new machinery was purchased and installed was to properly cool and preserve milk, and plaintiff’s express guaranty was to produce a temperature in the coolers that would do the work. The reference in the guaranty to the temperature at which the brine was to be maintained was merely incidental to the main purpose that the contracting parties had in mind.
 

 The record satisfies us that the machinery sold and installed by plaintiff failed at all times to do the work it was intended to do. From the beginning, defendant constantly complained to plaintiff about this, and plaintiff’s representatives on numerous occasions during a period extending over a number, of months worked on the plant in an effort to make it function properly. During this period, defendant incurred an expense of $165.-82 for ice which it was necessary to use in order to reduce the temperature of the brine to the required figure.
 

 Plaintiff makes much of certain charts that were placed in the refrigeration plant by its representatives in order to cheek its temperature. This appears to have been done on September 19, 1930, and September 20, 1930, approximately a year and four months after the equipment was installed. It is not clear from the testimony whether these charts were placed in the brine tank and in the cooler at the same time, or in the brine tank on one day and in the cooler the next day. In any event, it appears that the test was.not made during the regular operation of the plant, but was really a special operation undertaken for the purpose after certain preliminary work had been done on the plant by plaintiff’s representatives. We are unable to attach any probative value to the charts in question.
 

 Plaintiff contends that the reason the plant did not function properly was because the brine pump was too small, and that, through its representative, it offered to remedy the defect by supplying a larger brine pump, which it could do at cost of only $75. This offer was not made until some time in November, .1930, when the engineer employed by defendant to examine the plant had made his report, and after defendant had for approximately a year and a half suffered inconvenience, expense, and loss of milk by the failure of the plant to properly function, not
 
 *1105
 
 withstanding plaintiff’s efforts to make it do so. The offer was also conditioned upon the payment by defendant to plaintiff of the past-due installments on the note amounting to $1,209.08. The offer was refused by defendant on the ground that the installation of a new brine pump would be merely another experiment, and that he had enough trouble with the plant for the past two years. We do not think defendant was concluded by plaintiff’s offer. He was not obliged to permit plaintiff to indefinitely tinker with his plant in the hope that it might ultimately produce the desired result.
 

 Plaintiff’s plea of prescription against defendant’s reconventional demand is not well founded. The defects which rendered the equipment furnished and installed by plaintiff incapable of producing the results required by the contract should have been known to plaintiff. That they were of a character sufficient to authorize defendant to sue for the return of the purchase price and his expenses could not have been definitely known to defendant until plaintiff abandoned its attempt to remedy them. This abandonment on the part of plaintiff apparently did not occur until some time in the month of September, 1980, and defendant’s reconventional demand was filed March 3, 1931, which was well within the prescriptive period pleaded by plaintiff. See Woodward-Wight & Co., Ltd., v. Engel Land & Lumber Co., 123 La. 1093, 49 So. 719; Hyman v. Hibernia Bank & Trust Co., 139 La. 411, 71 So. 598.
 

 For the reasons assigned, the judgment appealed from is affirmed.