**CELLIZED BLOCK FLOORING CO. v. CAMPBELL.**

No. 17016.

Court of Appeal of Louisiana. Orleans.

May 8, 1939.

Rehearing Denied May 22, 1939.

Porteous, Johnson & Humphrey, of New Orleans, for appellant.

Yarrut & Stich, of New Orleans, for appellee.

JANVIER, Judge.

R. W. Markel, who conducts his business as "Cellized Block Flooring Company", brings this suit against Vic Campbell for the contract price agreed upon for the furnishing of all material and labor necessary to install an "oak tile" flooring in certain parts of a residence which Campbell was constructing in New Orleans.

Defendant admits the making of the contract and the price stipulated for, but resists payment on the ground that the work was not done in a workmanlike manner, contending that it is so defective that the cost of putting the said floors into proper condition will be greater than the amount which would be due defendant under the contract. Defendant contends, also, that he has sustained special damages and, furthermore, that, as a result of the recordation of the lien claimed by plaintiff, he has sustained additional damage, and he, therefore, by reconventional demand, seeks judgment against plaintiff for $450.

There was judgment dismissing both the suit of plaintiff and the reconventional demand and plaintiff alone has appealed.

On May 16, 1936, Markel submitted to Campbell a written offer to furnish and lay certain oak tile flooring in Campbell's residence. The price offered was $224 and in this offer Markel included the following recommendation:

"We recommend to use two-ply asphalt membrane water-proofing applied to the concrete sub-flooring with hot asphalt, and submit price for this work in the amount of $48.00."

The offer was accepted and the price, $224, was agreed to, but Campbell did not adopt the recommendation concerning the use of "asphalt membrane water-proofing". At just about the time of the commencement of the work, Campbell decided to put the same kind of floors in the kitchen and in the solarium and he asked Markel for a bid on the additional flooring. Markel, in writing, agreed to do the additional work for $63 and in his written offer again referred to his former suggestion concerning the membrane water-proofing. This time he said:

"With reference to the membrane water-proofing that we recommended in our original estimate, we are following your instructions in not using the membrane water-proofing, as you do not desire to assume the extra cost for this work. However should

any trouble be caused from dampness, account being laid on concrete over earth fill, we will not be responsible for it."

Apparently Campbell was not satisfied with this qualification of Markel's guarantee and, after some discussion, Markel wrote Campbell a letter containing the following paragraph:

"With reference to the second paragraph of our letter of September 3rd, regarding guarantee on account of omission of membrane water-proofing, as stated to you and Mr. Herbert Benson, at the building, we fully guarantee the floors installed at your residence and we agree to make any corrections that may be necessary from any expansion or cupping from the general use of your building, but we will not be responsible for any damage that may be caused from the outside entrance doorways, if water should get thru to the floors at these outside points; or if the water should get on the floors, from some unforeseen weather condition, thru the concrete walls above the floor line."

When the work was completed, many faults were found therein, chief among which was the fact that the floor was found to bulge up in many spots and to break loose from the plastic material which was intended to bind it to the concrete foundation on which it was laid. It seems certain that this condition resulted primarily from dampness, which penetrated the said concrete from below and which also seems to have reached the edges of the floor through the exterior walls. The record leaves no room for doubt that that type of floor cannot be satisfactorily applied to a concrete floor which itself is resting on earth, unless the building is located where there is extremely good drainage, or unless, between the concrete and the plastic material on which the floor is laid, there is placed the membrane water-proofing material which Markel had recommended. There seem to have been other defects in the floor, most of which could apparently have been remedied, but the absence of the water-proofing material was obviously responsible for the fact that water penetrated through the concrete and attacked the floor from below. It is quite apparent that this was the danger which Mr. Markel had in mind when he recommended the installation of the water-proofing material, and, had he unqualifiedly advised Mr. Campbell that he would not guarantee the floor against such condition

unless the water-proofing material should be installed, there is no doubt that he could not be held responsible. But it must be remembered that Markel is a flooring expert and that he was furnishing a special, patented type of flooring, concerning which he had all information and about which Campbell knew nothing.

He now states that, in buildings such as Campbell's, it is practically impossible to keep water from penetrating the concrete, and yet, even his first letter did not warn Campbell of this fact. It is true that he recommended the use of the water-proofing material, but he in no way intimated that failure to insert such material might cause the result which has occurred. It is true, also, that in his second letter he stated that he would not be responsible "should any trouble be caused by dampness", and, had the matter terminated there, it is probable that Campbell would be held to have assumed the risk of damage from dampness had it reached the floor because of absence of the said water-proofing material. But Campbell was not satisfied and did not permit the matter to terminate with this reservation, but demanded a more unconditional guarantee, and thereupon Markel wrote the letter in which he seems to have broadened his guarantee to include damage from any cause except as a result of water entering from the outside doorways, or as a result of water getting on the floors "from some unforeseen weather condition, through the concrete walls above the floor line". An analysis of these reservations shows that Markel agreed to be responsible unless the water should enter "from some unforeseen weather condition", and even then, only for such water as might find its way through the concrete walls "above the floor line". We may say here that it is very obvious that the water reached the floor by seeping up through the concrete on which it was laid and that, therefore, the reservation contained in Markel's guarantee had no application to such water, but, wherever it came from, there was no "unforeseen weather condition" which caused it to enter. There is no showing of any unusual fall of rain and it is very evident, from a reading of a paragraph in Markel's letter of October 5, that all he intended to protect himself against was one of the torrential downpours with which this city is sometimes visited, for, immediately following the paragraph extending the guarantee is the following explanation made by Mr. Markel:

"We are only making the above statement for the fact, that should we have a condition to arise that existed in New Orleans about eight years ago, where many buildings were flooded that had a considerable higher floor level than in your building."

We conclude, from all of these facts, that Mr. Campbell was justified in assuming that Mr. Markel's guarantee included conditions such as those which caused this damage and that, therefore, Mr. Markel must assume responsibility for the unsatisfactory condition of the floor.

■ Counsel for plaintiff argues that Campbell has not sustained the burden of showing that the defective condition of the floors resulted from one of the causes which, in his answer, plaintiff alleged. And the record leaves it doubtful whether the "cupping" and bulging of the floors resulted from those particular causes. But we think that it was not necessary that Campbell allege the causes which brought about the defective condition. Since Markel had, as we have found, guaranteed the floors against all defects except those which might result from certain excepted causes, all that Campbell would have been called upon to allege was the defective condition. This he has done. He was not required to allege more because, by the general allegation that the floors were defective and the proof of that allegation, the burden was shifted to Markel, the guarantor, to show that the cause was not within the coverage of the guarantee.

In A. Baldwin Sales Company v. Mitchell, 174 La. 1098, 142 So. 700, 702, the Supreme Court said:

"A sufficient defense to plaintiff's demand for the purchase price was that the equipment sold defendant and installed in his plant did not fulfill plaintiff's guaranty. Hence, the burden of showing that it did so comply was clearly upon plaintiff."

In Rainold v. J. T. Mann & Company, Inc., 9 Orl.App. 266, is found a case in which a contractor was sued for the return of a part of the contract price which had been paid and for damages sustained by the house owner as a result of the breach of contract to lay certain floors. This court said:

"Plaintiff made out a prima facie right of recovery by proving that the floors had 'cupped' etc., and did not present a 'smooth surface' such as the contract prescribed; and it then devolved upon defendant in order to escape liability to prove with reasonable certainty that the cause of the defect was of such character as to excuse performance on its part."

Counsel for plaintiff further argues that defendant should not be heard to resist payment of the contract price for the reason that, since it is shown that the floors have been completely laid, the defendant's only remedy is to seek the reduction of the contract price in accordance with the amount which will be required to remedy the defects complained of.

■ It is quite true that, where work under a contract has been completed, even though defectively, and the owner is sued for the contract price, his only remedy is to seek a diminution in price to the extent of the cost of remedying the defects. In Reicke v. Bland, 7 La.App. 280, we said:

" 'The jurisprudence of this state is that a contractor who has delivered his work to the owner may sue him when he has received it and is in the enjoyment of it; and that the contractor may recover the value of the work which has enured to the benefit of the owner, although the work be defective or unfinished; if a price has been agreed upon, the remedy of the owner is a reduction thereof to an amount necessary to perfect or to complete the work according to contract.' Babst v. Peritz, Orleans, No. 7548; Industrial Homestead v. Junker, Orleans, No. 7402; W. Berns & Bros. v. Reiss, 12 Orl.App. 126; 1 H.D. 807 No. 25; Succession of Kerry v. Freed Realty Co., 6 La.App. 437."

■ But that is exactly what the defendant has done. He has admitted the contract price and has alleged that, to remedy the defects will cost more than the contract price. In the absence of evidence to the contrary, his testimony to this effect must be accepted.

It is therefore ordered, adjudged and decreed, that the judgment appealed from be and it is affirmed.

Affirmed.