*44 So.2d 693*

**J. B. BEAIRD CO., Inc. v. BURRIS BROS., Limited.**

No. 39035.

Dec. 9, 1949.

Rehearing Denied Feb. 13, 1950.

Carter & Erwin, Franklinton, for defendant-appellant.

Melvin F. Johnson, Shreveport, for plaintiff-appellee.

PONDER, Justice.

J. B. Beaird Company, Incorporated, brought suit against Burris Brothers, Limited seeking to recover $2,109.59 with 5% interest from July 31, 1945 until paid for the balance due on the purchase price of a Beaird Challenger Dehydrator. In answer to the suit the defendant alleges that the machine has failed to dehydrate potatoes in the quantity guaranteed by the plaintiff. The defendant reconvened asking for the rescission of the sale and in the alternative for a reduction in the purchase price. The plaintiff interposed a plea of prescription of one year to the defendant's reconventional demands under the provisions of Article 2534, Revised Civil Code. On trial of the case the lower court gave judgment in favor of the plaintiff and the defendant has appealed.

It was conceded in the argument on this appeal that the defendant has sold the machine. Since the defendant is not in position to return the machine, the demand for the rescission of the sale passes out of the case. Consequently, the only questions are whether or not the defendant is entitled to a reduction in the amount of the purchase price and whether or not the plea of prescription is applicable.

It appears from the evidence that Milton Laporte, an agent and representative of the plaintiff, contacted J. M. Burris, president of the defendant corporation, with the view of selling the defendant a dehydrator. Burris and Lubye Green testified that Laporte represented to them that the machine would produce 600 pounds of dehydrated potatoes per hour and at that time Burris gave Laporte an order for the purchase of the machine. Laporte was not called as a witness and this testimony has not been contradicted. Burris testified that he relied upon these representations when he purchased the machine; that the plaintiff assisted in installing the machine; that Fuller, a representative of the plaintiff, supervised the unloading and setting up of the machine; that the final adjustment was made by Rickerson, another representative of the plaintiff; that Rickerson ran the machine for about four days without success; that Rickerson told him, after he had failed to make the machine operate, that he could not understand it and did not know what the trouble was; that the production at the time Rickerson was there was so small they never checked it; that Rickerson remained in Franklinton about ten days and the plaintiff at his request sent three other representatives to assist; that the three representatives were Laporte, an engineer and another person whose name he could not remember; that he had continuous trouble with the machine the entire season of the year 1945; that he kept tests of the output and that the machine turned out an average of 451 pounds per hour of dehydrated potatoes for that season; that at such rate the machine could not be operated at a

profit; that Edward F. Nield, Jr. and J. B. Beaird came to Franklinton on November 1, 1945 at his request; that Paul H. Allen, a representative of the plaintiff, called on him sometime in the middle of the summer of 1946; that eight of the representatives of the plaintiff came to Franklinton to observe the machine in operation during that period of time; that he secured the services of a Mr. Vessier, a machinist, in order to step up the production of the machine which resulted in no success; that he had a couple of other engineers, John Green and Howard Barrlow to watch the machine in operation and see if anything could be done to step up the production; that these engineers could not do anything to step up the production; that he and his employees have done everything within their power to step up the production; that the greatest production that he has been able to obtain from the machine was during a two week period of the season of 1947 when the machine turned out 475 or 478 pounds of. dehydrated potatoes per hour; that if he was not badly mistaken Neild told him at the time he observed the machine in Shreveport that it would produce 600 pounds of potatoes per hour.

Mr. Green testified that he was present when Laporte stated to Burris that the machine would produce 600 pounds per hour and that he knew that Burris would not be interested in the machine if it did not produce that much. He stated that he was considering going into the venture with Burris at that time and that it was on the personal guarantee of Laporte that the machine would produce 600 pounds per hour that induced Burris to buy the machine.

Robert McKelvin, who operated the machine for the defendant, corroborates Burris' testimony as to the output of the machine.

Neild, vice-president of plaintiff corporation, testified, on behalf of the plaintiff, that he was present when Burris observed the machine in Shreveport and told Burris that the machine was designed originally to take thirty bushels of raw potatoes; that the tests being conducted showed that it would equal or exceed that capacity and that. he felt sure the machine would be good for 600 pounds per hour; that Laporte was a salesman for the plaintiff with only authority to bring the customer in contact with the plaintiff; that Laporte did not work directly for him but there was no reason to believe he was not confined within those limits; that at the time he came to Franklinton the defendant was getting 480 pounds per hour of dehydrated potatoes from the machine; that he and Beaird came to Franklinton at Burris' invitation to find out what was going on; that on that occasion, in November 1945, they suggested to stop the machine in order to make some adjustments on the burner and were told that there was no need to stop it because it would stop anyhow; that they made adjustments of the fan and allowed the machine to cool down and tightened the chain belt; that after the machine operated for several minutes the

output was weighed showing that it was producing 600 pounds per hour; that during the conversation at the end of that day they assured Burris that it was their intention to make the machine comparable with later machines; that they sent two of their men to Franklinton to accomplish this; that the two men remained in Franklinton about one week installing a larger fan, a larger exhaust duct and made other mechanical modifications; that the reason Burris called him was because he was not satisfied with the production of the machine and getting less production than he thought he should. On cross-examination Neild testified that a machine subsequently built produced 733 pounds per hour; that it was the same model wherein the mechanical defects found in the Burris machine had been excluded; that he did tell Burris, prior to the purchase of the machine, that it was doing better than the designed basis and he felt sure the production of 600 pounds could be expected; that he did not consider it to be operating at normal capacity; that the machine Burris purchased was the first one that was placed on the market; that since that time various improvements have been made. This witness admits that Burris was dissatisfied with the machine.

Allen testified on behalf of the plaintiff that Burris tried to get him to condemn the machine so he could buy another; that he operated the machine when he visited Franklinton for about one hour and made

a spot test for about five minutes and it showed about 750 pounds per hour.

We find in the record the following correspondence with reference to the transaction to the effect, viz.: Letter from the defendant to the plaintiff on May 21, 1945, referring to a telephone conversation of May 21, entering an order for a dehydrator, stating that Laporte had quoted the price of the machine delivered and installed and that it was the understanding with Laporte that delivery would be made not later than July 15th. In reply the plaintiff stated that it had a definite promise for the completion of the machine for delivery on that date and informing the defendant that it was enclosing two copies of a formal contract. A copy of the purported contract was introduced which reads as follows:

"Mr. J. M. Burris          June 5, 1945
Burris Bros. Ltd.,
Franklinton, La.

We propose to furnish one (1) Beaird Challenger Dehydrator for the processing of sweet potatoes for stock feed, for the sum of Forty-five Hundred Dollars....$4500.00 The above price covers this machine complete in every respect, ready to operate and is f. o. b. cars or truck, our plant, Shreveport, Louisiana.

We do not include motive power for driving the machine, water or fuel supply system.

It is anticipated that the machine will be ready for shipment in ample time to process

the 1945 crop, however, our ability to make shipment will be dependent upon release of the necessary raw materials and mechanical parts by the War Production Board and other Governmental Agencies.

Your acceptance of this proposal, in the space provided below, will constitute a contract between us, guaranteeing acceptance of the machine and payment therefor, by you, on shipment.

Terms: To be arranged to the satisfaction of our Credit Department.

Respectfully submitted,
The J. B. Beaird Company, Inc.
C. S. Finegan, Manager of Sales

Accepted:
/s/   J. M. Burris
June 12, 1945."

Letter of December 28, 1945 from plaintiff to defendant stating that the plaintiff regretted that it was taking so long to get the replacement parts for the machine; letter of January 10, 1946 from plaintiff to defendant stating that it was sending Mr. Rickerson and crew to Franklinton on January 16th to make the necessary changes and improvements on the dehydrator and stating that these changes and improvements should give the machine an increased production which should place it in the same condition of the dehydrators now being completed; letter of February 8, 1946 from plaintiff to defendant stating that the plaintiff had incorporated all the latest improvements on defendant's machine and that it

did not believe that defendant would experience any further difficulties; a letter from the defendant to plaintiff in reply to a letter from the plaintiff of January 8, 1946 wherein the amount of the balance due was acknowledged and the defendant stated that it was withholding payment until the machine was tested, after the alterations had been made, to see if it was capable of the job that it was guaranteed to defendant in the contract. A letter from the assistant treasurer of the plaintiff corporation of date May 17, 1946 wherein it is stated that Beaird and Neild had assured him that they had made the necessary changes in the machine thereby making it comparable to any other machine that they had in the field and, as stated over the telephone, that the company would be glad to handle any complaint that the defendant might have to its entire satisfaction. A letter from plaintiff to defendant on June 20, 1946 that due to the acute market condition at the time the dehydrator was completed it was impossible to obtain or equip the machine with a roller chain on the drum drive and that it was forced to use another type of chain. It is stated in this letter that the plaintiff was shipping a new drive sprocket and a roller chain for replacement. A letter from plaintiff to defendant dated May 15, 1947 demanding payment of balance due on the machine wherein it is stated that a general review of the entire situation seems to disclose that the machine does not produce as

the defendant expected and that the plaintiff still holds to the opinion that the condition is the result of the operation methods and not of any fault on the part of the product. Letter from the defendant to the plaintiff of date May 17, 1947 in answer to communication of May 13 stating that the defendant was aware of the fact that he owed a balance on the machine but the machine was sold to it with a guarantee to produce at least 600 pounds of dry potatoes per hour which it had failed to do. It is stated in this letter that the defendant had made several trips to Shreveport and had spent a great deal of time and money trying to get the matter adjusted. It is further stated that the defendant would welcome the plaintiff showing how the machine could be operated if the method used by the defendant was the cause of the low production and that it is odd that the defendant has not heretofore been shown the correct method of operation. It is suggested in this letter that if the plaintiff would talk to their service men it would be enlightened on the matter. A letter from the plaintiff to the defendant of date May 27, 1947 wherein it is stated that there is no provision in the contract guaranteeing the machine to produce 600 pounds per hour and that Beaird and Neild recalled the defendant's statement to them that the machine has produced more than that quantity. We say here that this statement is not borne out by the testimony of Neild. It is stated in this letter that generally speaking 600 pounds of potatoes would be a conservative performance of the machines the plaintiff has in operation throughout the country.

From the testimony in this case it appears that the machine involved in this suit was one of the first of this type of machine manufactured and that all machines subsequently manufactured have been producing more than 600 pounds of dehydrated potatoes per hour. The machine undoubtedly has not been producing at this rate. The only testimony to the contrary is that of Neild and Allen wherein on two occasions the machine was only operated for a few minutes. The evidence shows that replacements have been made in the machine from time to time and that eight different representatives of the plaintiff corporation have attempted to correct its deficiency in production. There is no question in our mind but what Laporte made the representation to Burris at the time the order for the machine was placed because the testimony of Burris and Green to that effect has not been contradicted. Rickerson, a representative of the plaintiff corporation, who spent some several days in Franklinton endeavoring to step up the production without success was not called as a witness. Irrespective of the fact that the purported contract did not contain the guarantee it is apparent that warranty of the thing sold was not waived. The evidence shows that the defendant would not have bought the machine if it could not

have been profitably operated and that it could not be profitably operated at its rate of production. From the representations of Laporte and the statement of Neild that the defendant could expect 600 pounds per hour production, the defendant was justified in believing that he would secure this amount of production at the time it purchased the machine. We are not impressed with the testimony that the failure of the machine to sufficiently produce was because of the method of operation for the reason that the defendant did every thing in its power, with the assistance of eight different representatives of the plaintiff, to step up the production of the machine.

■ The machine was undoubtedly defective because so many replacements were made in an attempt to step up the production. Irrespective of the representation of the agent as to the output of the machine, the defendant had the right to rely on the implied warranty that the thing sold is suitable for the purpose intended because warranty was not waived. Unless warranty is waived the seller warrants the thing sold as fit for the purpose intended. A. Baldwin Sales Company, Inc., v. Mitchell, 174 La. 1098, 142 So. 700. Under the provisions of Article 2475 of the Revised Civil Code a seller warrants the thing which he sells and under the provisions of Article 2476 the seller warrants that there is no hidden defect in the thing sold. Under the provisions of Article 2520 a sale may be avoided where a vice or defect in the thing sold renders it useless, or so inconvenient or imperfect, that it must be supposed the purchaser would not have purchased it had he known of the vice.

"Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price." Article 2541, Revised Civil Code.

"The buyer may also content himself with resorting to this action, when the quality, which the thing sold has been declared to possess and which it is found to want, is not of such importance as to induce him to demand a redhibition." Article 2542, Revised Civil Code.

"The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action." Article 2544, Revised Civil Code.

■ The defendant does not have to prove the exact cause which renders the machine incapable of functioning and is only required to prove the failure of it to so do. Especially is this true regarding complicated machinery. Crawford v. Abbott Automobile Company, 157 La. 59, 101 So. 871.

■ The plea of prescription is not well founded because the defendant is not using the demand for the reduction in price as a weapon of attack but using it as a

shield or defense in resisting the payment of the balance of the purchase price. He is not precluded by prescription from urging this defense. Holcomb & Hoke Mfg. Co. v. Theodora, 1 La.App. 445; Thompson v. Milburn, 1 Mart., N.S., 468; Lastrapes v. Rocquet, 23 La.Ann. 68; Edwards & Kurz v. Plaquemine Ice & Cold Storage Company, 46 La.Ann. 360, 15 So. 61; Otis v. Texas Company, 153 La. 384, 96 So. 1.

We have arrived at the conclusion that the defendant is entitled to a reduction in the purchase price but there is no evidence in the record upon which we could arrive at the amount of reduction the defendant is entitled to. Such being the case, it is necessary to remand the case in order that the amount of the reduction may be ascertained.

For the reasons assigned, the judgment of the lower court is reversed and set aside and the case is now remanded to be proceeded with consistent with the views herein expressed. All costs to await the final disposition of the case.

HAMITER, Justice (concurring in part and dissenting in part).

The plea of prescription, I agree, is without merit.

I am unable to conclude, however, that the judgment rendered by the district court in favor of plaintiff should be reversed. Except for the mentioned plea of prescription, the appeal presents only two questions of fact, both of which were resolved by the trial judge favorably to plaintiff. He found, to quote from his written reasons for judgment, that (1) "* * * the defendant has failed to prove that the dehydrator was guaranteed to produce six hundred (600) pounds of sweet potatoes per hour," and that (2) "* * * this dehydrator, if properly operated, will actually produce an average of six hundred (600) pounds of dehydrated potatoes per hour." These findings of fact, after my careful study of the evidence, do not appear to me to be manifestly erroneous.