GLADNEY, Judge ad hoc.
This is a suit by Harold G. Aubry, El-more F. Bonin and J. S. Brown, Jr., assignees of the Adeline Corporation of Jeanerette, Louisiana, a corporation in the process of liquidation and dissolution, for the purpose of collecting from the defendant, 'Colvin H. Todd, doing business as Delta- Cash Wholesale Grocery Company, a balance of $1,250 allegedly due on the sale of four hundred cases of “Uncle Joe’s Table Syrup.”
The action is defended on the ground, that vendor’s agent sold the syrup to ap-pellee, representing it to be a good table syrup that would be acceptable to his trade, and knowing that it was purchased for the sole purpose of resale, but that such representations were not fulfilled by the quality of the syrup, and therefore there was a breach of warranty. A reduction in the purchase price is sought. The defense presents, therefore, a demand for a reduction in the price and is subject to the same rules and the same limitations as the red-hibitory action.
The trial court sustained defendant’s contentions and rejected the demands of plaintiffs, who have prosecuted this appeal.
Prior to April 7, 1947, Ralph Brown, a broker and a partner in the firm of the Brown Brokerage Company, Shreveport, offered for sale a product known as “Uncle Joe’s Table Syrup,” manufactured by the Adeline Corporation of Jeanerette, Louisiana. Mr. W. H. Morris, acting on behalf of the Delta Cash Wholesale Grocery Company, purchased four hundred cases for the price of $2,500. On the above mentioned date delivery of the syrup was received and in turn offered for resale in the trade territory served by the buyer, resulting in the distribution of some two hundred cases to merchants who sold direct to consumers.
On May 22, 1947, the Delta Wholesale Grocery wrote a letter to the Adeline Corporation, enclosing a check for $1,250, and advising: “We are enclosing our check to cover 200 cases 12/5 Uncle Joe Syrup. We still have 200 cases on hand which is unsalable in this territory as our Customers are returning it to us as unfit merchandise. We will' gladly return this to you as I’m sure this would be most satisfactory way of handling.’-’
The defendant company has been in business for many years and enjoys a large volum-e of business. For ten years it has made many purchases from Mr. Ralph Brown of the Brown Brokerage Company who was familiar with the defendant’s trade. The syrup was purchased on Mr. Brown’s representations that it was a'good table syrup ánd would be acceptable to the trade. No sample was presented, but ap-pellee relied upon the warranties made by Brown in whom he had a confidence of long standing. .
During the week after April 7, 1947, defendant sold and delivered about two hundred cases of “Uncle Joe’s Table Syrup” in the trade area. Almost immediately numerous complaints as to quality and dissatisfaction of consumers were received, and in many instances the merchandise was picked up and restitution of price made. The complaint of the consumers was that the syrup was not edible and that it had an unpleasant taste and appearance. Resale was then stopped and the letter of May 22, referred to above, was written.
The principal use of a table syrup is said to furnish a sweet coating for biscuits, cakes, waffles, bread, etc. It is an important factor, no doubt, in the feeding of young and old, and it is hard to visualize a dietary use of a distasteful syrup. It so happened in this case, the voice of the consumer was heard — “Uncle Joe’s Table Syrup” did not serve its purpose as a table syrup and as a result became unmarketable.
Appellants, in complaining of the decision of the trial court, say that Brown, in making representations concerning the quality of the syrup was without authority to do so. We think otherwise. The letter of Mr. Aubry, president of the corporation, dated May 16, 1947, states that the syrup was sold and accepted as a marketable product. Because of the legal warranties implied in Louisiana reasonable guarantees of the product offered for sale may be made by the broker employed in making the sale.
*278 Another contention is that where simple inspection would have made apparent to the buyer defects in the thing offered for sale, the vice is not to be classed among the number of redhibitory vices. This argument is rooted in Article 2521, Revised Civil Code. At the time of the purchase no sample was presented and the buyer was not required to open cases and cans to make inspection. He was justified in relying on the representations of the salesman in whom he had confidence. Richards v. Burke, 1852, 7 La.Ann. 242, 243; Bulkley v. Honold, 1856, 19 How. 390, 392, 60 U.S. 390, 15 L.Ed. 663; Williams v. Miller, 1836, 9 La. 129; Millaudon v. Price, 1848, 3 La.Ann. 4, 5; Huntington v. Lowe, 1848, 3 La.Ann. 377, 379; Robertson v. Wallis, 1855, 10 La.Ann. 214; S. B. Bevans & Co. v. Farrell, 1866, 18 La.Ann. 232, 233; Hossier Realty Co. v. Caddo Cotton Oil Co., 1915, 136 La. 328, 67 So. 20; Barkley & Co. v. Burguieres Co., 1927, 7 La.App. 39, 42; Wrenn v. New Orleans Chair Co., 1932, La.App., 145 So. 40, 41.
Objection is also made that the evidence does not show that the product contained defects and vices justifying the defense. That it was unfit for the purpose for which it was bought suffices to grant the relief sought by appellee.
Finally, it is argued that the buyer’s motive in refusing to pay for the balance was due to the action of our government in removing controls on the prices and uses of sugar products, including syrup, and that this made it difficult to sell the product purchased, as decontrol permitted the marketing of better products at lower prices. Federal controls on sugar products were lifted on July 28, 1947, Federal Register, Vol. 12, No. 151, page 5279. It is to be noted that this date was more than sixty days after appellee had refused to sell any more of “Uncle Joe’s Table Syrup” to his retail customers. The point is not well taken.
We think the law applicable to this case is well summed up by Justice Ponder in J. B. Beaird Co., Inc., v. Burris Bros., Ltd., 216 La. 655, 44 So.2d 693, 697:
The machine was undoubtedly defective because so many replacements were made in an attempt to step up the production. Irrespective of the representation of the agent as to the output of the machine, the defendant had the right to rely on the implied warranty that the thing sold is suitable for the purpose intended because warranty was not waived. Unless warranty is waived the seller warrants the thing sold as fit for the purpose intended. A. Baldwin Sales Company, Inc., v. Mitchell, 174 La. 1098, 142 So. 700. Under the provisions of Article 2475 of the Revised Civil Code a seller warrants the thing which he sells and under the provisions of Article 2476 the seller warrants that there is no hidden defect in the thing sold. Under the provisions of Article 2520 a sale may be avoided where a vice or defect in the thing sold renders it useless or so inconvenient or imperfect, that it must be supposed the purchaser would not have purchased it had he known of the vice.
“ 'Whether the defect in the thing sold be such as to render it useless and altogether unsuited to its purpose, or whether it be such as merely to diminish the value, the buyer may limit his demand to the reduction of the price.’ Article 2541, Revised Civil Code.
“ ‘The buyer may also content himself with resorting to this action, when the quality, which the thing sold has been declared to possess and which it is found to want, is not of such importance as to induce him to demand a redhibition.’ Article 2542, Revised Civil Code.
“ ‘The action for a reduction of price is subject to the same rules and to the same limitations as the redhibitory action.’ Article 2544, Revised Civil Code.
“The defendant does not have to prove the exact cause which renders the machine incapable of functioning and is only required to prove the failure of it to so do. Especially is this true regarding complicated machinery. Crawford v. Abbott Automobile Company, 157 La. 59, 101 So. 871.”
Article 2543, Revised Civil Code, provides :
*279 “The purchaser who has contented him-' self with demanding a reduction of the price, can not afterwards maintain the redhibitory action.
“But in a redhibitory suit, the judge may decree merely a reduction of the price.”
We are of the opinion that the product sold was unsatisfactory for the purposes sold and defendant should not be required to pay for the unsold merchandise which has been properly tendered to the vendor, and the buyer, appellee herein, should be relieved of and is by this decree relieved of liability for the payment of any balance due on the purchase' price.
The judgment appealed from is affirmed at appellants’ costs; appellants’ demands are rejected and appellee is by this decree relieved from liability as to any balance due on the purchase price.
KENNON, J., not participating.