145 So.2d 335 (1962)
Mrs. Naomi Jeanne HARRIS et al., Plaintiffs-Appellees,
v.
AUTOMATIC ENTERPRISES OF LOUISIANA, INC., Defendant-Appellant.
No. 600.
Court of Appeal of Louisiana, Fourth Circuit.
October 1, 1962.
*336 Jones, Walker, Waechter, Poitevent, Carrere & Denegre and Lucius F. Suthon, New Orleans, for defendant-appellant.
Michael E. Culligan, Jr., Mandeville, for plaintiffs-appellees.
Before CULPEPPER, PONDER and McGEE, JJ.
WILLIAM H. PONDER, Judge ad hoc.
This is a redhibitory action in which two of the plaintiffs are seeking a rescission of the sale of launderette machines and equipment, with an alternative demand for reduction in the purchase price, with damages in either event, arising out of the purchase of the machines and equipment by the two plaintiffs from the defendant.
*337 The plaintiffs, Mrs. Naomi Jeanne Harris, divorced wife of Kivas P. Band, and Mrs. Marion Jean Margaret "Peggy" Armour, widow of Bernard Cavanagh, operated under a commercial partnership under the name of "USCAN Launderette" and there was additional demand on behalf of the partnership for rents under a contract of lease on the building in which the launderette was located.
Plaintiffs seek to recover the sum of $21,723.98, together with eight percent per annum interest thereon, representing the stipulated purchase price for the equipment. Also, they seek to recover the sum of $1,988.87 representing the cash down payment on the purchase price, and $8204.28 representing the cost and expenses of installing the machines, preparation of the store, and for labor and parts, with legal interest on the latter two items from judicial demand until paid. Alternatively plaintiffs' demand is for a reduction of $10,000 in the purchase price and judgment for $8204.28 for expenses and damages. In a supplemental petition the individual plaintiffs allege that they were required to spend an additional sum of $2875.15 following the filing of the original petition.
The defense in this case is that there was a printed warranty on the invoice (which they contend is sales order) at the time the property was purchased by the plaintiffs, and that the defects in the machinery were minor and that all of the machinery and equipment sold to the plaintiffs by the defendant was fit for the purpose for which it was intended; in general otherwise denying the allegations of plaintiffs' petition.
After trial had on the merits, judgment was rendered by the trial court in favor of the plaintiffs, individually, against the defendant, in diminution of the price paid for the launderette equipment purchased in the sum of $10,000, and further for installation and operating expenses in the sum of $6,000, with five percent per annum interest thereon from judicial demand until paid.
There was further judgment in favor of the USCAN Launderette, the partnership consisting of the above two plaintiffs, for the sum of $3,841.92, with five percent per annum interest thereon from judicial demand until paid; assessing all costs against the defendant. From this judgment the defendant has devolutively appealed.
The record in this case is voluminous and contains considerable conflicting testimony. We have studied the record carefully and do not think a detailed discussion of the testimony of the various witnesses would serve any useful purpose, as the salient facts of this case may be stated as follows:
The plaintiff, Mrs. Naomi Jeanne Band, had previously had business dealings with the defendant, a Delaware Corporation, through its salesman and agent Phillip J. Haverty, in the purchase and establishment of a small launderette, which apparently was successful, and the business relationship was cordial. In the early part of 1959, Mrs. Band responded to an advertisement in the daily newspapers of New Orleans by the defendant seeking purchasers and operators of coin-operated automatic launderettes. In those advertisements, the defendant suggested that the stores were completely installed, ready for business, and that all details of location, financing, lease negotiations and installation of equipment would be handled by their representatives. It was clearly indicated that these launderettes would operate with little or no supervision. Accordingly, Mrs. Band, contacted the defendant and negotiations proceeded with defendant through its salesman, Phillip J. Haverty, in whom she seems to have had a great deal of faith and confidence. The other plaintiff, Mrs. Cavanagh, a cousin of Mrs. Band then entered the negotiations and planning. The defendant was, at the time of these events, the local distributor for washers, dryers, and auxiliary launderette equipment manufactured by Philco-Bendix Corporation. Phillip J. Haverty, the salesman and agent for the defendant, undertook to select and recommend a site for the proposed launderette, to advise concerning *338 it and to supervise the installation of the equipment. He also undertook to advise and assist in the initial promotional activities, and to provide service, maintenance, counsel and advice concerning the equipment, its operation and the general operations of the launderette establishment. The initial discussions and negotiations concerning this venture were almost exclusively with Phillip J. Haverty. He selected and recommended a site at 2010 St. Roch Avenue, in the City of New Orleans, which he represented as being a highly desirable location in which a launderette of the size to be purchased by the plaintiffs should produce about $1600 per month income.
As a result of these discussions and recommendations, the plaintiffs formed a partnership, USCAN Launderette, which entered into a contract of lease for the building in the above location on April 21, 1959.
On May 28, 1959 the plaintiffs ordered from the defendant 30 washing machines, 10 dryers, a water heater, a soap vender, an illuminated sign, and a coin changer, for the stipulated price, including interest, transportation and other charges, of $21,723.98, upon which the plaintiffs made a cash down payment of $1994.86. Of the cash down payment a $500 deposit was paid on that date and the remainder at a later date. The type and quantity of equipment ordered by plaintiffs was based entirely upon the advice and recommendations of the salesman for the defendant, Phillip J. Haverty. At the time of the order, the plaintiffs and Haverty executed an act of sale and chattel mortgage which conveyed title to the equipment to the plaintiffs, securing the credit portion of the sale, and in which it was stipulated that the balance of the indebtedness was payable in 36 installments of $603.44 each. In the act of sale there is no provision for a waiver of warranty. On the same date, the plaintiff Mrs. Band signed a document with reference to the equipment ordered, on which the items purchased were itemized, which plaintiffs claim is an invoice and defendant contends is a sales order. On the reverse side of the document is a statement which is labeled "Warranty". This warranty is very limited in scope and warrants to the buyer that each part of the equipment sold is free under normal use and service for which manufactured from defects in material and workmanship, for a period of 90 days from date of delivery. Also, the warranty provides that it is limited only to replacement of, or credit for, such parts as shall be returned to a parts depot of seller, with transportation charges prepaid. It also provides that only such parts would be replaced as acknowledged by the seller to be defective. It places upon the buyer the burden and responsibility of transportation charges and costs of labor in replacement. It also provides that this warranty is expressly in lieu of all other warranties expressed or implied.
Delivery of the machines began on June 26, 1959, without prior notice, and some were unloaded on the sidewalk. The defendant, through its employees, Clemmons and Haverty, provided specifications and approval for the concrete slab upon which the machines were to be placed and on June 27, 1959 Clemmons provided a map or sketch for the placement and location of the machines on the slab. About June 30, 1959, the last of the machines arrived and the service man of defendant, named Ballenger, was present to supervise the installation of the machines. About July 2, 1959, while the installation of the machines was in progress, it was discovered that the dimensions on the sketch provided by the defendant were erroneous and that all of the machines could not be located on the concrete slab as planned. It was then necessary to cut off and reset bolts for installing and securing the machines to the slab. The defendant failed to connect at least one machine and failed to remove motor shipment blocks from the machines.
In trying out the machines, several of them shook dangerously and filled above the normal water level and then would not *339 empty. The plaintiffs have complained that the initial adjustments were not properly made, which is well established by the record. Later, on the opening date the record confirms that numerous faults and difficulties developed. Some of the hoses had not been connected and others had to be disconnected. During the first week of operations, one of the machines broke loose from the foundation and injured the finger of a customer and caused damage to two other machines. Several other machines started pulling loose from the slab. Several machines had to be cut loose from the slab and reset, were not reset properly, and broke loose repeatedly afterward. The evidence shows that customers were unable to wash and dry their clothes, water overflowed from some of the machines, and many customers departed disgusted and never returned.
Although these machines were never dismantled to determine the exact technical nature of many of the difficulties, the record speaks very clearly that from the beginning and throughout the time that the machines were sought to be used, there was continual trouble to the plaintiffs in their operation. Mrs. Band testified, and her testimony has not been satisfactorily refuted, that in the beginning only 5 or 6 out of the 30 machines would be in working order. As time progressed, this situation became worse, and when the business closed in January of 1960, there where only 3 machines running and these were vibrating.
One of the major complaints by the plaintiffs is the lack of service or inadequate service provided by the defendant. Few, if any, satisfactory repairs were made by the defendant, which had a small service department usually with one mechanic or repairman who had a large territory, including both New Orleans and Baton Rouge, to serve. Mrs. Band complained repeatedly to the defendant by telephone calls to its office about the trouble she was having with the machines; repeatedly requested and demanded service and repairs which were frequently slow in being rendered, and sometimes several days would pass before a request for service would be answered. Another complaint by the plaintiffs, which is supported by the record, is that when the defendant did send a repairman in response to plaintiffs' complaints, the repairs and service were faulty or inadequate and the machines were never placed in or restored to a satisfactory working condition. The evidence reveals that from the date of opening in July, 1959, until the closing of the store in January, 1960, the gross revenues of the plaintiffs at this launderette were $615.64.
The record reveals that plaintiffs were not alone in their difficulties with the defendant's equipment and service. Several other launderette operators complained to the defendant, and two other lawsuits similar to this one were initiated near the same time against the defendant for alleged defects and inadequacy of the equipment and service.
The defendant's contention is that its employee, Phillip J. Haverty, did not have authority to select a site for the proposed laundry operation or to agree to do the necessary work to prepare the site and install the equipment; also that the printed warranty on the document constitutes a waiver of the warranty implied by law and thus the redhibitory action is inappropriate. Further, that plaintiffs had not sustained the burden of proving that the defects existed before or at the time of the sale and had not sufficiently proved their demands.
With reference to the authority of the defendant's salesman, Phillip J. Haverty, who was discharged shortly after obtaining the order, we believe that the attempt by the defendant to deny his authority to provide all the assistance that Mr. Haverty led the plaintiffs to believe would be provided, is rather belated in the defense of the suit. Mrs. Band had previously purchased a small launderette through Mr. Haverty, at which time she received a turn-key job, meaning that most of these arrangements were made by Mr. *340 Haverty and the defendant, to their apparent mutual satisfaction. The defendant's advertising conveys the clear suggestion that it would sell a complete launderette store with all equipment and facilities necessary to begin operations, including installation of machinery and facilities. The stores were advertised as being automatic and requiring little or no supervision. The law is clear that a corporation is liable for the acts of its officers, agents, and servants acting within the scope of the actual or apparent authority vested in them. LSA-C.C. Articles 436-439. Esso Standard Oil Co. v. Welsh, 235 La. 593, 105 So.2d 233.
In all Louisiana sales there is an implied warranty that the object sold is free of redhibitory vices, i. e. hidden defects. LSA-C.C. Art. 2475, 2476; Fisher v. City Sales and Service, La.App., 128 So.2d 790; Combs v. International Harvester Company, La.App., 115 So.2d 641; LSA-C.C. Art. 2520, 2530. Unless warranty is waived, the seller warrants the things sold as fit for the purpose intended. Beaird Co. v. Burris Bros., 216 La. 655, 44 So.2d 693. Defendant relies upon the exclusion of warranty in the printed warranty on the reverse side of the invoice. Mrs. Band was the only one of the plaintiffs who signed the invoice, and she testified that her attention was never invited to the writing on the reverse side of the invoice, which was executed in multiple copies. Phillip J. Haverty admitted that he made no point of calling her attention to those provisions. We must conclude that the sale or contract is reflected by the act of sale and chattel mortgage, dated May 28, 1959. The invoice is a separate and collateral document, the purpose of which was evidently to itemize articles and prices. Even if it is conceded arguendo that this invoice constitutes a material part of the sale and contract between the parties, we do not think that it compels the result suggested by defendant. This is further suggested by the fact that one of the plaintiffs was not required to sign the invoice but was required to sign the act of sale itself.
An exclusion or waiver of warranty by which the parties make a law unto themselves is in derogation of the general law and should be construed strictly. Dufief v. Boykin, 9 La.Ann. 295. A stipulation printed on a letterhead, invoice, or other document furnished by one of the parties to a contract and not referred to in the contract itself or brought to the attention of the other party has no effect against him. Kodel Radio Corporation v. Shuler, 171 La. 469, 131 So. 462; Stracener v. Nunnally Bros. Motor Co. et al., 11 La.App. 541, 121 So. 617, 123 So. 911.
The printed warranty on the document furnished by the defendant is not free from ambiguity. A reading of it shows that although the defendant was warranting the equipment to be suitable for its intended purpose, it nevertheless restricted it to the replacement of defective parts. It will be noted that although the mechanic for the defendant corporation during the warranty period worked on the machines, he did not satisfactorily explain the cause of the difficulty, and the record is devoid of any evidence that he suggested a replacement of any defective parts, even though the machines were not working properly. "The seller is bound to explain himself clearly respecting the extent of his obligations: any obscure or ambiguous clause is construed against him." LSA-C.C. art. 2474.
The defendant did on a few occasions attempt to make repairs and adjustments, but these attempts were never successful or satisfactory. Thus, even if this court were to attempt to give effect to the warranty, we would be forced to conclude that the defendant failed to abide by the obligations that it sought to impose upon itself.
Our courts have been reluctant to give effect to stipulated waivers of the warranty implied by law, but recognize the rights of the redhibitory action if applicable. Fisher v. City Sales and Service, supra; Crawford v. Abbott Automobile Co., 157 La. 59, 101 So. 871; Stracener v. Nunnally Brothers Motor Co., supra; Radalec, Incorporated *341 v. Automatic Firing Corp., 228 La. 116, 81 So.2d 830; Cobb v. Truett, La.App., 11 So.2d 120.
An action for nullity or rescission of a contract lies for an alleged vice in the contract itself tainting it ab initio. It destroys the very existence of the contract from the beginning. Savoie v. Snell, 213 La. 823, 35 So.2d 745. The redhibitory action is one of rescission and acts as an extinguishment of an obligation for failure of consideration. Coco v. Mack Motor Truck Corp., 235 La. 1095, 106 So.2d 691.
Under the provisions of Article 2520 et seq., a sale may be avoided where a vice or defect in the thing sold renders it useless for the purpose for which it was sold, or so inconvenient or imperfect that it must be supposed that the purchaser would never have purchased it had he known of the vice. J. B. Beaird Co. v. Burris Bros., supra. A machine or item of equipment that will not meet the needs of the owner and the purpose for which it was purchased and "which will not run or runs intermittently or imperfectly and which requires the frequent attention of a mechanic to keep it going is an abomination to the owner." Reech v. Coco, 223 La. 346, 65 So.2d 790, 792. It is not incumbent upon the purchaser to prove the particular and underlying cause of the defects which make the item sold unfit for the purpose intended, particularly when it is a complicated piece of machinery; it is sufficient if the buyer alleges and proves as a fact that such defects exist. Fisher v. City Sales and Service, supra; Crawford v. Abbott Automobile Co., supra; Rushton v. LaCaze, La.App., 106 So.2d 729.
In the recent case of Goff v. Dewey Olivier, Inc., 137 So.2d 393 (La.App., 3rd Cir., 1962) it was observed by the court, which we quote in part:
"While it is true that under Article 2520 of our Revised LSA-Civil Code, the burden of proof is on one who institutes the redhibitory action, this article has been modified by decisions of our Supreme Court.
"[2] A line of cases beginning with Crawford v. Abbott Automobile Co., Ltd. (1924), 157 La. 59, 101 So. 871, held that the vendee (particularly in the case of complicated machinery) need not prove the exact cause of the malfunctioning, if he showed merely that the thing was not operating properly. We have not found any decision overruling the Crawford case, supra. This case was cited with approval in J. B. Beaird Co., Inc. v. Burris Bros., Ltd. (1949), 216 La. 655, 44 So.2d 693, and Aubry v. Todd (La.App., 2 Cir., 1951), 55 So.2d 276.
"[3] Another line of cases beginning with A. Baldwin Sales Co., Inc. v. Mitchell (1932), 174 La. 1098, 142 So. 700, held that unless warranty is waived, the vendor warrants the thing sold as fit for the purpose intended and in the absence of a waiver, the burden of proof is on the vendor. The Baldwin case, supra, and those decided after it have been applied where the seller warranted the quality of the thing sold. The Baldwin case, supra, was quoted with approval in J. B. Beaird Co., Inc. v. Burris Bros., Ltd., supra. * *
"[5] The Louisiana Code and the jurisprudence protects the vendee in a contract of sale, if the thing sold was so defective at the time of the sale as to impair its utility and render it unfit for its intended purpose, provided the defective condition was neither discoverable by simple inspection nor declared to exist by the vendor."
The weight of evidence convinces us that the launderette equipment purchased by plaintiffs was so imperfect, defective and useless that they would not have purchased it had they known about the defects and imperfections.
*342 The action quanti minoris or for reduction in the price is proper when the thing sold is so defective that it is useless and altogether unsuitable for its intended purpose, or when the defect is such as to diminish its value. Mattes v. Heintz, La. App., 69 So.2d 924.
Applying the above principles of law to the facts as found in the record, and for reasons herein assigned, we are of the opinion that the judgment appealed from should be affirmed. All costs are assessed against the defendant and appellant.
Affirmed.